392 So.2d 651 (1980)
STATE of Louisiana
v.
Patricia Jane KNOWLES.
No. 80-K-1540.
Supreme Court of Louisiana.
December 15, 1980.
Rehearing Denied January 26, 1981.
*653 Diehlmann C. Bernhardt and Steven A. Jefferson, Monroe, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-respondent.
DIXON, Chief Justice.
The defendant was indicted for first degree murder and conspiracy to commit first degree murder, violations of R.S. 14:30[1] and R.S. 14:26. A jury acquitted her of the murder charge, and the state has now attempted to prosecute her for the alleged conspiracy. Defendant filed two motions to quash the indictment, based upon pleas of former jeopardy, autrefois acquit, res judicata and collateral estoppel. The trial court denied the motions, and defendant seeks review.
The victim of the homicide was the husband of Sherry Littleton, who is defendant's sister. Testimony at the trial on the murder charge indicated that defendant was in the company of Sherry Littleton from 5:00 p. m. until about midnight, when the shooting occurred. Winfred Chappel, a witness for the prosecution, also accompanied the two sisters during part of that time. The three visited various bars in the City of Monroe, drinking alcohol, smoking marijuana, and taking capsules of amphetamine. The evidence indicates that Chappel and Littleton were romantically involved at the time, and that Mrs. Littleton asked Chappel to kill her husband. Defendant testified that Chappel refused the request, and that she believed that the matter was at an end. Chappel testified that the murder was discussed two or three times later in the night.
By late evening, defendant stated that she was staggering, and could barely drive her sister's car. The three then went to a convenience store. Reportedly at her own request, Mrs. Littleton was struck several times in the face by Chappel, as part of a plan to make it seem that she had been beaten by her husband. Defendant then drove Littleton to her trailer home; she testified that she waited in the car for several minutes after Littleton entered the trailer. When defendant made her entrance, she found her sister sitting on a bed with a loaded 16 gauge shotgun. As the victim approached, defendant stated that she grabbed the barrel of the gun, which discharged. The police were called, and Littleton told them that she had shot her husband after he had beaten her.
Pursuant to negotiations with the district attorney, Mrs. Littleton pleaded guilty to negligent homicide in connection with the fatal shooting of her husband. Defendant moved to Kansas. Some time later an undercover investigator with the Kansas Bureau of Investigation contacted the Ouachita Parish sheriff's office reporting that defendant had admitted shooting her brother-in-law. Defendant was arrested in Kansas and gave a recorded statement; she was *654 then brought back to Louisiana, where the grand jury indictments were returned.
No person can twice be put in jeopardy for the "same offense." Amendment V, U.S.Const.; Art. 1, § 15, La.Const. (1974); C.Cr.P. 591. Whether two offenses are the same for purposes of double jeopardy is determined by the test established in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932):
"... The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...."
It is clear that this rule is constitutionally required of the states. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).
The Louisiana rule is embodied in C.Cr.P. 596:
"Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
This court has employed both the "Blockburger" test, see, for example, State v. Steele, 387 So.2d 1175 (La.1980), and State v. Doughty, 379 So.2d 1088 (La.1980), and the "same evidence" test. State v. Solomon, 379 So.2d 1078 (La.1980); State v. Smith, 323 So.2d 797 (La.1975); State v. Didier, 262 La. 364, 263 So.2d 322 (1972); State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1972).
The "same evidence" test depends upon the proof required to convict, not the evidence actually introduced at trial. State v. Doughty, supra. Thus, if the evidence necessary to support the second indictment would have been sufficient to support the former indictment, double jeopardy prohibits the second prosecution. State v. Richardson, 220 La. 338, 56 So.2d 568 (1951); State v. Foster, 156 La. 891, 101 So. 255 (1924); State v. Roberts, 152 La. 283, 93 So. 95 (1922).
In this regard, it is significant to note that the jury present at the murder trial was instructed as to the law of principals contained in R.S. 14:24, which states:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
At the trial on the murder charge, defendant could have been convicted if the jury was convinced that she aided and abetted her sister in intentionally killing the victim, or if the jury found that defendant counseled her sister in the commission of the crime.
Criminal conspiracy, the crime with which defendant is charged in the present prosecution, is defined by R.S. 14:26 as:
"... the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."
If the state has proof that defendant reached an agreement with her sister and/or Chappel for the specific purpose of murdering the victim, and that an act was done in furtherance of the agreement, such proof is not necessarily sufficient to convict the defendant as a principal to the crime. The one difference is that, in order to be convicted as a principal, there must be proof that the crime was committed; a conviction for conspiracy does not depend *655 upon the actual commission of the crime, but only upon an act in furtherance of the conspiracy. The evidence necessary for a conviction of conspiracy to commit first degree murder is therefore not sufficient to support a conviction for the murder itself.
Similarly, the proof required to convict an accused as a principal to a crime does not necessarily involve the same evidence that is needed for a conviction of conspiracy. The term "principal" is broadly defined to include the actual perpetrator of the crime as well as one who assists in the perpetration. The crime of conspiracy is formed when an agreement to commit a crime is reached between two or more persons and an act is done in furtherance of the agreement. It is at least conceivable that an accused may be proven to have assisted in a crime without introducing any evidence as to an agreement. See, e. g., Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). In this sense, the two crimes do not involve the same evidence; they are not the "same offenses." This is recognized in R.S. 14:26, which states:
"If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other."
However, the case with which we are presented is not one in which the defendant has been convicted of the "intended basic crime." In fact, it has never been proved that the homicide was the result of anything other than Mrs. Littleton's criminal negligence. Because of this, the provision allowing prosecution for both the conspiracy and the underlying offense is not relevant. It is necessary, then, to determine whether the double jeopardy prohibition bars prosecution of the defendant for conspiracy to commit the crime of which she was acquitted, when the jury was specially instructed as to the law of principals. It is in this regard that we must consider defendant's argument that the state should be barred from prosecuting the conspiracy charge on the basis of collateral estoppel.
The doctrine of collateral estoppel was explained in Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970):
"... It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit...."
The opinion makes it clear that the protection of this doctrine is anchored in the Fifth Amendment guarantee against double jeopardy. In this state, the application of the doctrine has been limited "to those cases where it is required by Ashe v. Swenson...." State v. Doucet, 359 So.2d 1239, 1248 (La.1978). Compare State v. Cain, 324 So.2d 830. (La.1975).
In Ashe v. Swenson, the jury in the first trial determined that the defendant was not proved to have been one of the robbers involved in the alleged crime. Under the collateral estoppel doctrine, the state was not allowed to present "the same or different identification evidence in a second prosecution for the robbery." 397 U.S. at 476, 90 S.Ct. at 1195-96; 25 L.Ed.2d at 477. In the present case, the basis of the jury's determination is not so clear, and herein lies the difficulty in applying collateral estoppel. To employ the doctrine, the court must determine what issue of "ultimate fact" was resolved by the jury's verdict:
"... Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to `examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' ..." Ashe v. Swenson, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475-76. *656 Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L. Rev. 1, 38-39 (1960).
In Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948), the court decided a case which was almost the exact reverse of the present situation. The defendant was acquitted of conspiracy to defraud the United States. He was then prosecuted for the underlying substantive offense, publishing false invoices, on the theory that he aided and abetted the perpetrator in the commission of the offense. The court applied res judicata to bar the second prosecution on the basis that, under the circumstances, the defendant could not have aided and abetted the commission of the offense unless he had reached an agreement with the actual perpetrator. The verdict of acquittal on the conspiracy charge was said to reflect the jury's determination that defendant never made such an agreement, even though defendant concededly was implicated with participation in the crime. In reaching its decision, the court looked to the facts adduced at trial and the instructions given to the jury, "set in a practical frame and viewed with an eye to all the circumstances of the proceedings." 332 U.S. at 579, 68 S.Ct. at 240, 92 L.Ed. at 184.
In the present case, the jury's verdict found the defendant not guilty of being a principal to an intentional killing. Two findings could have supported this conclusion: that defendant actually fired the fatal shot, but that she lacked the requisite intent because of her intoxication; or that defendant was not proved to have been concerned in the commission of the offense. As a corollary to this, the jury might have determined that the shooting was the result of an accident or negligence. From a reading of the entire record, it is evident that the state's chief theory in prosecuting defendant for murder was that she was the one who fired the shotgun. In support of this theory, the state introduced defendant's recorded statement, in which she purportedly admitted shooting her brother-in-law. The state also relied upon the testimony of an agent of the Kansas Bureau of Investigation, who reported that defendant told him that she was the one who shot the victim. On the stand, defendant completely recanted her recorded statement, and testified that she never touched the trigger of the gun. In addition, the defendant stated that she had consumed such a quantity of alcohol and drugs that night that she was staggering and could not see straight.
The state's evidence tending to show that defendant pulled the trigger was weak. The only eyewitness to the shooting, Mrs. Littleton, refused to testify, claiming the privilege against self-incrimination. Defendant's recorded statement describing the events in question was vague and ambiguous as to her actual handling of the gun. Moreover, the agent of the Kansas Bureau of Investigation described defendant's condition as "hysterical" when she allegedly admitted the shooting. Under these circumstances, we find that a rational jury could not have concluded that defendant was proved beyond a reasonable doubt to have fired the gun. Because of this, the jury did not need to reach the question of whether defendant's intoxication negated the requisite intent. R.S. 14:15.
However, it was also necessary for the jury to determine whether defendant aided, abetted or counseled her sister in the commission of the killing. Perhaps recognizing the difficulty of proving who actually pulled the trigger, the state introduced evidence tending to show that defendant and her sister had deliberately schemed to murder the victim; the state also requested the trial judge to instruct the jury that defendant could be convicted of the crime under the law of principals. The agent of the Kansas Bureau of Investigation reported that defendant told him that she, her sister and Winfred Chappel had talked about killing Mrs. Littleton's husband. Chappel testified that defendant and her sister discussed the subject of murder two or three times during the night. However, he was not specific in describing the nature of the discussions; nor did he implicate defendant in the plan to make it seem that *657 Mrs. Littleton had been beaten by her husband, other than to remark that she was present at the time. Defendant testified that she never heard the murder discussed after Chappel refused her sister's request to do the shooting. She also stated that, when she came out of the convenience store that night, she sat alone in her sister's car and that Chappel and her sister were in Chappel's car. Chappel was said to have rolled down the window and to have told defendant to look the other way; defendant stated that she glanced into Chappel's car and saw Chappel striking her sister in the face. Given this evidence, a rational jury must have concluded that, although a plan was formed for the murder of the victim, and an act done in execution of the plan, defendant was simply not involved in it; she did not aid, abet or counsel her sister in the commission of the alleged offense. A rational jury could not have concluded otherwise and have found defendant not guilty of first degree murder.
A finding that defendant was not a principal to the alleged offense is a finding of ultimate fact, and one which directly bears upon the conspiracy charge. The jurisprudence interpreting the definitions of "principals" (R.S. 14:24) and "criminal conspiracy" (R.S. 14:26) has implied that anyone who is proved to be a conspirator in a crime is also a principal to the offense. See, e. g., State v. Kimble, 375 So.2d 924 (La.1979); State v. Witherspoon, 292 So.2d 499 (La.1974). However, these cases involved crimes that were in fact consummated: because there was proof that the intended basic crime was completed, there was no logical difficulty in finding that the conspirators were also principals. The present conspiracy prosecution involves a distinctly different set of circumstances, in that the state has failed to prove that defendant is guilty of intentional homicide, either as a perpetrator or as a "principal." In this context, it is plausible to theorize that defendant could be a conspirator without being a principal.
The theory may not be irrational in the abstract, but when it is matched against the facts adduced at the murder trial, it becomes apparent that the conspiracy prosecution is an attempt to relitigate the broad scope of facts found adversely to the government. Upon the facts of this case, it would be illogical to believe that even if defendant did not aid, abet or counsel her sister in killing the victim, she nevertheless specifically agreed with her sister to commit the crime. The jury's verdict, exonerating defendant of any criminal involvement in the homicide, must be taken to preclude litigation of the issue of whether she conspired to commit the killing.
Although the definitions of principals and conspirators are not perfectly synonymous, the imposition of criminal liability upon one who aids and abets in a crime is founded upon the same principle that makes a conspirator culpable for the acts of a coconspirator. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Both of these inchoate offenses are directed at persons who knowingly participate in the planning or execution of a crime. In the present case, the issue of defendant's alleged criminal involvement has been resolved in her favor, and the state cannot be allowed to raise the issue under another name. It is simply not plausible to believe that defendant could have reached an agreement with her sister to kill the victim yet nevertheless have failed to "aid" or "counsel" her sister in the commission of the slaying. Any agreement made by defendant would necessarily constitute "aid" and "counsel." Just as the facts in Sealfon v. United States, supra, logically dictated that the defendant could not have aided and abetted in the crime without reaching an agreement with the actual perpetrator, the facts in this case command the inference that, if defendant did not aid, abet or counsel the commission of the offense, she must never have reached an agreement with her sister for the specific purpose of murdering the victim. When the jury returned its verdict finding defendant not guilty of giving any form of assistance in the killing, it must necessarily have concluded that no criminal agreement *658 was ever made. Under these circumstances, the finding that defendant was not a principal precludes a finding that she was a conspirator. Cf. United States v. Williams, 341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758 (1951) (Black, J. concurring); Krench v. United States, 42 F.2d 354 (6th Cir. 1930); Davis v. People, 22 Colo. 1, 43 P. 122 (1895); Annotation, Prosecuting both Conspiracy and Offense, 92 L.Ed. 185-209 (1948); 98 L.Ed. 448-54 (1954).
The gravamen of the charge of conspiracy was essentially included within the allegation that defendant acted with specific intent in aiding her sister to commit the offense. In this case, the jury's verdict of not guilty can only be taken to mean that defendant was absolved of any complicity in the alleged crime. Defendant's version of the shooting was accepted, not the state's. Under such circumstances the second prosecution must be barred. State v. Smith, 323 So.2d 797 (La.1975); City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975); State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974).
We therefore conclude that, given the record in the murder trial, a rational jury must have concluded that defendant did not fire the fatal shot, did not aid or abet her sister in doing so, and, in short, was not criminally involved in planning or executing the homicide. Such a finding necessarily negatives the presence of an agreement for the specific purpose of accomplishing the crime, which is the precise issue which the state wishes to litigate in the second prosecution. Accordingly, the doctrine of collateral estoppel forbids the prosecution of defendant for a crime which arises from the very facts which have already been resolved in her favor.
The trial court judgment overruling the motion to quash the conspiracy indictment is reversed and set aside, the motion to quash the indictment is granted, and the defendant is discharged.
WATSON, Justice, concurring.
Defendant was acquitted of first degree murder, and is now charged with conspiracy to commit first degree murder. The State is attempting to prosecute twice using the "same evidence". The plea of double jeopardy should be sustained, but it is unnecessary to resort to the doctrine of collateral estoppel.
I respectfully concur.
NOTES
[1] The homicide occurred in January, 1979. The version of R.S. 14:30 which was in effect at that time was enacted by Acts 1976, No. 657: "... the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm."