WALTZER, Judge.
On June 6, 1990 the State filed a bill of information charging the defendant Robert W. Harrison and his co-defendant, Arthur Forbes, with aggravated battery, a violation of R.S. 14:34, simple kidnapping, a violation of R.S. 14:45, and intimidation of a witness, a violation of R.S. 14:129.1. Arthur Forbes pled guilty to the charges on January 10, 1991 and is not part of this appeal.
Robert Harrison was arraigned on July 2, 1990 wherein he entered a plea of not guilty. On March 20,1991, after a two day trial, he was found guilty as charged on all counts. The defendant waived all delays and was sentenced on the same day to serve seven years at hard labor along with the payment of court costs, or to serve thirty days in jail in default of payment, on the aggravated battery charge. The sentence is to run consecutive to any other sentence. He was sentenced to serve five years at hard labor on each of the two remaining charges, to run concurrently with each other.
The record was lodged in this Court on August 30, 1991. On October 9, 1991 defense counsel, Gail Nelson, was ordered to file assignments of error as well as the appellant’s brief. Ms. Nelson then withdrew as counsel of record, at the request of the defendant, and on January 23,1992 this case was remanded to the trial court for *913 the purpose of appointing new appeal counsel. On March 9, 1992 the trial court appointed the Orleans Indigent Defender Program (O.I.D.P.) to represent the defendant on appeal.
On April 28, 1992 this Court ordered Mr. Dwight Doskey, of O.I.D.P., to file assignments of error and the appellant’s brief by May 11, 1992. On June 4, 1992 and on August 11, 1992, Mr. Doskey was again ordered to file assignments of error and the appellant’s brief. On September 16, 1992 the appellant’s brief was filed and the State’s brief was filed on October 5, 1992.
Ms. Nathalee Battise testified that she had been to a Bingo game which ended at approximately 10:15 p.m. The Bingo game was a couple of blocks from her house. On the way home, she stopped by a friend’s house on Daneel Street where she stayed until midnight. Ms. Battise was walking home alone and noticed a black and tan Cougar pass her, circling the block. After she crossed Amelia on Daneel Street, the car approached her a second time. A man jumped out of the Cougar, stuck a knife to her throat, and pulled her into the car from the passenger side. Ms. Battise stated that she had no idea who the man was and had never seen him before. The man was later identified as Arthur Forbes, the co-defendant.
After Ms. Battise was in the car, the man said to her, “Bitch, you’re going to pay for what you did to my friend.” Ms. Battise stated that Mr. Forbes drove approximately two blocks and kept telling her that she was going to pay for what she did. Ms. Battise was questioning Mr. Forbes when the defendant jumped up from the back seat and punched her in the face saying that she was not going to court to testify against him. Ms. Battise testified that she was a witness in a judicial proceeding against the defendant.
Ms. Battise testified that the defendant stabbed her in the chest with a knife that the co-defendant had given him. The defendant kept hitting Ms. Battise until she “played like [she] had passed out.” The defendants pulled her out of the car on Liberty Street in between General Taylor and Marengo. Ms. Battise got the license plate number from the car as the defendants were driving away. She then went around the corner to a friend’s house and asked the inhabitants to call the police.
New Orleans police officer Justin Crespo testified that on April 28, 1990 at approximately 12:53 a.m., he and his partner, Darrin Bush, were dispatched to the 2300 block of Marengo. Upon arriving on the scene, he met with the victim, Nathalee Battise. Ms. Battise was accompanied by a female friend who had assisted her in calling the police. Ms. Battise told the officer that one of the persons was Robert Harrison, the defendant, and gave a description of the other male. Officer Crespo telephoned the EMS unit because Ms. Battise’ face was swollen and she had stab wounds about the neck, chest and face area. Ms. Battise gave a description of the car as well as the license plate number to the officer.
Officer Crespo ran the license plate number and found that it was a black Mercury registered to Arthur Forbes, the co-defendant. The officers determined, from a description given by Ms. Battise, that Ms. Battise was abducted from the 3400 block of Saratoga.
New Orleans police officer Ralph Caesar testified that he participated in a follow-up investigation of this matter. Officer Caesar interviewed Ms. Battise at her residence a couple of days after the incident. Ms. Battise told the officer that the vehicle was black, that one of the perpetrators was Robert Harrison, and gave a description of the other perpetrator, as well as the license plate number. The officer ran the license plate number on the computer and found that it was registered to Arthur Forbes, the co-defendant.
At a later date, Officer Caesar showed Ms. Battise a photographic line up which contained Arthur Forbes. Ms. Battise identified Mr. Forbes as one of the perpetrators.
Officer Caesar testified as to the accuracy of photographs that were taken of the victim after the incident.
*914 The defense presented four witnesses. The first was Larry Hyde who was a supervisor at Workload, a business which finds temporary help for local businesses, and which employed the defendant. Mr. Hyde testified that the defendant was scheduled to work at the Meridien Hotel on April 27, 1990, but could not testify as to the 28th because the defense did not lay a proper foundation for the introduction of business records and, therefore, the court sustained an objection to hearsay.
The second witness was Edward Santos who testified that he was employed by Workload in April of 1990 and that he worked with the defendant at Workload. On April 27, 1990, Mr. Santos testified he went to the Workload office at approximately 3:30 p.m. to pick up paperwork and then arrived at the Meridien Hotel for 4:00 p.m. He worked as a steward in the kitchen, as did the defendant. The witness testified that three people from Workload were assigned to work at the Meridien at 4:00 p.m. that day. One of those was the defendant, Robert Harrison.
Santos testified that he and the defendant were assigned to the third floor, under the supervision of Earl Champion. Mr. Santos testified that the defendant could not have left the premises because his absence would have been noticed. Mr. Santos and the defendant finished work at 1:30 a.m. and walked to the Circle View Bar on St. Charles Avenue to drop off their work tickets and have a couple of beers. The Circle View Bar accepted the work tickets from employees of Workload during hours that the Workload office was not open.
Jesse Narcisse was the third witness called by the defense. Narcisse lives with the defendant’s father in Belle Rose, Louisiana. Ms. Narcisse testified that she met Ms. Battise approximately one year earlier when Ms. Battise and the defendant were together at a lounge on Louisiana Avenue. Narcisse’s testimony contradicted Ms. Bat-tise’s testimony that she had never dated the defendant. Narcisse testified that she did not see the defendant on the night of the incident and had not seen Ms. Battise until the day of trial.
The defense called co-defendant Arthur Forbes. He testified that he previously pled guilty to the charges against Ms. Bat-tise. He further testified that he did not know defendant Harrison prior to the court appearances for this case. Forbes testified that on the night in question, he was driving his car on Louisiana Avenue. He further testified that the defendant was not with him. Forbes stated that Ms. Battise flagged him down saying that she wanted a date meaning that she was soliciting sex. Ms. Battise then got in the car and Forbes gave her $20. Ms. Battise attempted to get out of the vehicle without doing what she promised to do for the money. In response, Forbes grabbed her and hit her a couple of times. Ms. Battise left, taking the license plate number and saying she was going to call the police.
On rebuttal, the State called Yolanda Brown, Director of Personnel at the Meri-dien Hotel in April of 1990. Ms. Brown is the custodian of records which deal with personnel. Ms. Brown explained that personnel who are sent from Workload bring a work slip with them from Workload, and that person is signed in and out at the security desk. Ms. Brown testified that the Meridien supervisor who was to have supervised the defendant and witness Mr. Santos did not arrive at work on April 27, 1990 until 4:54 p.m. Ms. Brown stated that if Mr. Champion had signed a Workload sheet verifying that the witness or the defendant arrived at work at 4:00 p.m., the document was falsified since Mr. Champion was not at work to verify the presence of the workers. Ms. Brown’s testimony successfully impeached the testimony of Ed Santos who stated that the supervisor, Mr. Champion was there to sign his ticket at 4:00 p.m.
Ms. Brown stated that Mr. Champion is responsible for assuring the physical presence of the workers and that Mr. Champion has been neglectful of his duties. Ms. Brown stated that the Meridien has implemented a new supervisory procedure because of the performance of Mr. Champion.
The defendant claims that the convictions for intimidation of a witness, ag *915 gravated battery, and simple kidnapping violate the prohibition against double jeopardy.
The Double Jeopardy Clause protects against, inter alia, multiple punishment for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In determining whether convictions violate double jeopardy prohibitions, the Louisiana Supreme Court has utilized both the Block-burger test enunciated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and the “same evidence” test, although in recent years, it principally has relied upon the “same evidence” test when evaluating double jeopardy claims. State v. Miller, 571 So.2d 603, 606 (La.1990).
In State v. Knowles, 392 So.2d 651 (La.1980) the court stated the two rules as follows:
[Under] the test in Blockburger, ... the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied is whether each provision requires proof of an additional fact which the other does not ...
The “same evidence” test depends upon the proof required to convict, not the evidence actually introduced at trial. Thus, if the evidence necessary to support the second indictment would have been sufficient to support the former indictment, double jeopardy prohibits the second prosecution.
Knowles, supra at 654.
In this case, the defendant was convicted of aggravated battery, simple kidnapping and intimidation of a witness. Those crimes are defined as follows:
R.S. 14:34 Aggravated Battery: Aggravated battery is a battery committed with a dangerous weapon. (A battery is defined as the intentional use of force or violence upon the person of another ... R.S. 14:33)
R.S. 14:45 Simple Kidnapping: Simple kidnapping is:
(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent ... R.S. 14:129.1 Intimidation of a Witness: No person shall intentionally:
(a) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force, a witness with intent to influence his testimony, his reporting of criminal conduct or his appearance at a judicial proceeding;
(b) Injure or attempt to injure a witness in his person or property with intent to influence his testimony, his reporting of criminal conduct or his appearance at a judicial proceeding ...
The defendant claims that it is necessary to prove the elements of a battery and the elements of simple kidnapping in order to sustain the conviction of intimidation of a witness.
Defendant Harrison argues that:
“the injuring of a witness with the intent to influence his testimony subsumes completely the crime of aggravated battery. While one would not have to injure a witness with a dangerous weapon, one could only injure a witness by committing a battery. Under the facts of this case, the injury was committed with a dangerous weapon, the knife. After proving the intimidation of a witness charge, no further evidence was necessary to proof of an aggravated battery. Similarly, the force involved in the intimidation of a witness was also the same force used in moving the victim about from one place to another. The moving from one place to another was the intimidation — as presumably intimidation need not be verbal.”
In applying either test to the facts in this case, no violation of double jeopardy exists. Under the Blockburger test, the issue is whether each crime requires proof of an additional fact which the others do not. Here, aggravated battery requires proof of the use of a dangerous weapon, whereas simple kidnapping and intimidation of a witness do not. Likewise, intimidation of a witness requires an intent to influence a witness’ testimony, whereas aggravated *916 battery and simple kidnapping do not. Finally,. simple kidnapping requires that a victim be seized and carried from one place to another without the victim’s consent, which is not an element of either aggravated battery or intimidation of a witness. Consequently, under the Blockburger test, this claim is without merit is denied.
Similarly, an application of the “same evidence” test reveals that this claim must fail. The issue under the same evidence test is whether the evidence required to support a conviction of one crime would also have supported a conviction of the other crime(s). If so, then the convictions violate double jeopardy. State v. Steele, 387 So.2d 1175, 1177 (La.1980).
Since this test is not dependent upon the evidence actually adduced at trial, then one need only look to the definition of each crime to see that each crime requires proof of elements that are not contained in the other. In order to sustain a conviction of simple kidnapping, it must be shown that the victim was intentionally and forcibly seized and carried from one place to another. This is not an element of either aggravated battery or intimidation of a witness. This claim is without merit and is denied.
A review of the record for errors patent reveals one. The defendant was sentenced to court costs or jail time in default of payment. Jurisprudence holds that an indigent defendant may not be sentenced to serve time in jail in lieu of payment of court costs and that proof of a defendant’s indigency is shown when the defendant is represented by the public defender’s office. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Nelson, 531 So.2d 1171 (La.App. 4th Cir.1988). Here the defendant was represented at trial by private counsel, but on appeal, the defendant was represented by the public defender’s office. Representation on appeal by the public defender’s office has been held to satisfy the requirement of indigency. State v. Davis, 544 So.2d 20 (La.App. 4th Cir.1989). Thus, the defendant is considered indigent and may not be sentenced to serve time in jail in default of payment of court costs. We note that it is not necessary to remand the case under C.Cr.P. article 881.4, which requires remand for sentences imposed after January 1, 1992, because it applies to those sentences which must be set aside rather than simply altered or amended.
For the reasons discussed, the sentence is amended to delete jail time in default of payment of court costs and in all other aspects the convictions and sentences are affirmed.
AFFIRMED AND AMENDED.