COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VERSUS

DONALD BROUSSARD

**********

ON APPLICATION FOR A SUPERVISORY WRIT
FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 17-284
HONORABLE ANTHONY THIBODEAUX, DISTRICT JUDGE

**********

**JUDGE VAN H. KYZAR**

**********

Court composed of John D. Saunders, Van H. Kyzar, and Charles G. Fitzgerald, Judges.

WRIT GRANTED AND MADE PEREMPTORY;
REVERSED AND REMANDED.

**M. Bofill Duhé**
**District Attorney**
**W. Claire Howington**
**Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR APPLICANT:**
     **State of Louisiana**

**Harry L. Daniels, III**
**Daniels & Washington**
**38167 Post Office Road**
**Prairieville, LA 70769**
**(225) 346-6280**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **Donald Broussard**

**KYZAR, Judge.**

This matter is before the court on an application for a supervisory writ by the State of Louisiana, seeking review of the trial court's grant of a motion to quash a count in a bill of information charging the defendant, Donald Broussard, with aggravated obstruction of a highway. Exercising this court's discretionary jurisdiction to review the issue on a writ application as opposed to direct appeal, we grant the writ and make it peremptory, reversing the decision of the trial court and remanding the matter for further proceedings consistent herewith.[1]

## FACTS AND PROCEDURAL HISTORY

On March 17, 2017, Defendant was charged by indictment with one count of manslaughter, a violation of La.R.S. 14:31, and one count of aggravated obstruction of a highway, a violation of La.R.S. 14:96. Before the commencement of Defendant's jury trial, the State severed the charge of aggravated obstruction of a highway and proceeded to trial on the manslaughter charge only. On October 18, 2018, the jury returned an 11-1 verdict for the lesser included offense of negligent homicide.

Defendant appealed his conviction, arguing that the evidence was insufficient to find his actions were an immediate and contributory cause of the victim's death and that the sentence imposed was excessive. This court, on rehearing, recognized as an error patent that the non-unanimous jury verdict was unconstitutional pursuant to the United States Supreme Court's holding in *Ramos v. Louisiana*, 590 U.S. __, 140 S.Ct. 1390 (2020). *State v. Broussard*, 19-792 (La.App. 3 Cir. 6/12/20), 299

---

[1] While La.Code Crim.P. art. 912 B(3) provides that the state "may appeal" adverse judgments or rulings on a motion to quash an indictment or any count thereof based on a plea of double jeopardy, we have addressed the issue on application for supervisory writs exercising our discretionary jurisdiction. *State v. Clues-Alexander*, 17-883 (La.App. 3 Cir. 2/2/18) (unpublished opinion); *State v. Alexander*, 17-511 (La.App. 3 Cir. 9/8/17) (unpublished opinion); *State v. Sweat*, 12-492 (La.App. 3 Cir. 6/6/12) (unpublished opinion).

So.3d 176. Accordingly, this court reversed Defendant's conviction for negligent homicide and remanded the case for a new trial. *Id.*

On July 6, 2020, the State filed an amended bill of information, charging Defendant with one count of negligent homicide, a violation of La.R.S. 14:32, and one count of aggravated obstruction of a highway, a violation of La.R.S. 14:96. Thereafter, on September 2, 2020, Defendant filed a "Motion to Quash Count 2 of the Bill of Information [In] Violation of the Double Jeopardy Clause." Defendant alleged that during his first trial for manslaughter, the State relied upon the aggravated obstruction of a highway charge as the underlying felony committed by Defendant when the victim was killed. By finding him guilty of the responsive verdict of negligent homicide, Defendant argued, the jury rejected the State's claim that the homicide occurred while Defendant committed aggravated obstruction of a highway. Accordingly, Defendant requested the charge of aggravated obstruction of a highway be quashed on the grounds of double jeopardy. At a hearing held October 12, 2020, the trial judge granted the motion to quash.

On October 15, 2020, the State filed a notice of intent to apply for supervisory writs, a request for stay, a request for return date, and a motion for transcripts. The trial court set the return date for November 12, 2020, ordered the matter stayed until the State's writ application was resolved, and ordered the court reporter to provide the parties with the October 12, 2020 transcript. On November 13, 2020, this court received the State's writ application, which was timely post-marked November 12, 2020.

We set forth the pertinent facts of the case here, as the previous decision of this court on rehearing did not do so, only addressing the constitutionality of the verdict as non-unanimous. On July 8, 2016, the victim, Rakeem Blakes, rear-ended a vehicle being driven by Defendant at a location near Highway 90 and Ambassador

2

Caffery Parkway.[2] The victim immediately left the scene, causing Defendant to follow him in his car, while calling 911 and relaying the victim's license plate number. The dispatcher advised Defendant to return to the scene of the accident, but he did not do so. Various witnesses testified that both vehicles proceeded through traffic at high rates of speed. A witness testified that the victim looked scared as he was driving and that he looked back over his shoulder. Another witness agreed that the victim looked scared. In Iberia Parish, approximately nine miles away from the original scene, the victim apparently lost control of his vehicle and drove head-on into an eighteen-wheeler. The victim died, and his vehicle caught fire. Defendant stopped at the second scene; various witnesses described him as appearing to be angry.

At the October 12, 2020 hearing on the motion to quash, Defendant argued that at his first trial, the State relied upon the aggravated obstruction of a highway charge to prove manslaughter. He asserted that the jury's return of a verdict of negligent homicide revealed its rejection of the State's argument. Therefore, Defendant stated, "the issue as to aggravated obstruction of a highway . . . has already been litigated . . . [and] rejected[.]" In response, the State urged that the doctrine of collateral estoppel, as it relates to double jeopardy, requires a high level of certainty that the previous jury based its verdict solely on the issue in dispute and not on any other ground. In the present case, asserted the State, it is not possible to determine on what grounds the jury relied upon in reaching its verdict of guilty of the lesser offense of negligent homicide.

Further contesting the State's argument at hearing, Defendant argued that the temporal and causal elements discussed by the State were of "no moment." The only

---

[2] The record in Defendant's previous appeal was made an exhibit to this writ application.

pertinent issue, Defendant asserted, was whether or not the jury heard evidence of aggravated obstruction of a highway and "foreclosed on it." Defendant asserted that if the State had proved its case of aggravated obstruction of a highway, the jury would have found Defendant guilty of manslaughter as charged. Because the jury heard evidence of aggravated obstruction of a highway and rejected that evidence in returning a lesser verdict, Defendant asked the trial judge to quash count two.

After hearing the above arguments, the trial court issued the following ruling:

BY THE COURT:

> The record shows that the State presented predominantly aggravated obstruction of a highway as one of the requisite elements for the crime of vehicular negligence – negligent homicide, okay?

BY MS. HOWINGTON:

> Well, the original charge was manslaughter, Your Honor.

BY THE COURT:

> In looking at the jury instructions and the jury voir dire and the testimony given here, they seem to be focused on the aggravated obstruction of a highway. It was well litigated, and the jury rejected it.
>
> So I'm going to grant your motion. I find double jeopardy.
>
> . . . .
>
> Motion to quash is granted.

**OPINION**

The State contends the trial court erred in granting Defendant's motion to quash. As there are no factual disputes to resolve in this writ application, only the trial court's application of the legal doctrine of collateral estoppel, we review the trial court's ruling *de novo*. *State v. Thibodeaux*, 19-609 (La.App. 4 Cir. 12/4/19), 286 So.3d 513.

4

The supreme court has stated the following regarding collateral estoppel:

> The Double Jeopardy Clause of the Fifth Amendment, however, also incorporates the doctrine of collateral estoppel. This component of the Double Jeopardy Clause was recognized by the United States Supreme Court in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). There, defendant was accused of being part of a group of masked men who robbed six men playing poker. The defendant was subsequently tried for the armed robbery of one of the card players, Donald Knight, and was acquitted after a jury trial. The state then brought petitioner to trial six weeks later, over his objections, for the armed robbery of another of the poker players who was robbed that night. Defendant was convicted at the conclusion of this second trial.
>
> The Supreme Court, applying the doctrine of collateral estoppel it found implicit in the Double Jeopardy Clause, reversed defendant's conviction and held the acquittal in defendant's first trial precluded the state from charging him for the second offense. The Court stated that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. The Court also noted that, in criminal cases, the rule of collateral estoppel
>
>> is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."
>
> *Id.* at 444, 90 S.Ct. at 1194 (internal citations omitted). The Court concluded that defendant could not be prosecuted a second time because, to convict defendant, the second jury would have to reach a conclusion directly contrary to that reached by the first jury.
>
> This court has recognized *Ashe's* principle that collateral estoppel "is anchored in the Fifth Amendment guarantee against double jeopardy. In Louisiana, the application of the doctrine has been limited 'to those cases where it is required by *Ashe v. Swenson* . . .' " *State v. Blache*, 480 So.2d 304, 306 (La.1985), citing *State v. Knowles*, 392 So.2d 651, 655 (La.1981); *State v. Doucet*, 359 So.2d 1239, 1248 (La.1978). Thus, while the Louisiana protection against double jeopardy is broader than its federal counterpart, we apply the federal test of *Ashe* where collateral estoppel is concerned.

*State v. Cotton*, 00-850 (La. 1/29/01), 778 So.2d 569, 573-74.

Reviewing the case *de novo*, we find the collateral estoppel doctrine does not apply in this case since the jury's non-unanimous verdict was not a valid judgment. In *State v. Goodley*, 423 So.2d 648, 651 (La.1982), the supreme court held that when a "non-waivable defect, such as an illegal verdict, prevents a jury from delivering either a conviction or acquittal at a defendant's first trial, that defendant cannot avail himself of the plea of double jeopardy."[3] The illegal verdict at issue in *Goodley* was a non-unanimous jury verdict in a capital case. *State v. Goodley*, 398 So.2d 1068 (La.1981). The supreme court reasoned that an illegal verdict is equivalent to no verdict, either of conviction or acquittal. *Goodley*, 423 So.2d at 651. Similar to *Goodley*, this court found that the non-unanimous jury verdict returned in the present case was illegal pursuant to the United States Supreme Court's holding in *Ramos*. *Broussard*, 299 So.3d 176. Thus, like the jury's verdict in *Goodley*, the verdict in the present case is considered as the equivalent of no verdict, either of conviction or acquittal.

In *State v. Self*, 00-633, p. 1 (La.App. 3 Cir. 11/2/00), 772 So.2d 337, a panel of this court considered the defendant's plea of double jeopardy where he faced retrial after his original conviction by an 11-1 jury verdict, for the crime of aggravated rape of a child under the age of twelve years, was reversed as an illegal

---

[3] While holding that "the constitutional protection against double jeopardy does not in and of itself prohibit Goodley's retrial for first degree murder" the court affirmed the motion to quash on grounds "that to retry Goodley for the crime of first degree murder would be inconsistent with the right to appeal in Louisiana." *Id.* at 651.

verdict.[4] In concluding that double jeopardy did not prohibit a retrial of the aggravated rape charge, this court stated the following:[5]

> The Double Jeopardy Clause of the United States Constitution's Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *See also* La. Const. art. 1 § 15; La.Code Crim.P. art. 591 *et seq.* The Louisiana Supreme Court has held that when a non-waivable defect, such as an illegal verdict, fails to result in either a conviction or acquittal at the defendant's first trial, the double jeopardy provision of the Fifth Amendment does not bar retrial of the defendant. *State v. Mayeux*, 498 So.2d 701 (La.1986); *State v. Goodley*, 423 So.2d 648 (La.1982). *See United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In such cases, it is as if the jury in the prior proceeding failed to reach a decision. *Goodley*, 423 So.2d 648. Therefore, we find that the State's prosecution of the defendant for forcible rape, and the trial court's acceptance of the defendant's guilty plea for attempted forcible rape after remand from the appellate court, were not violations of the principles of double jeopardy as provided by the United States Constitution, Louisiana Constitution, or La.Code Crim.P. art. 591 *et seq.*

*Id.* at 338 (footnote omitted).

Since the doctrine of collateral estoppel is anchored in the Fifth Amendment guarantee against double jeopardy, we conclude that as with double jeopardy, the jury's return of an invalid verdict in the present case prohibits Defendant from availing himself of the protection of collateral estoppel. Accordingly, the trial court erred in granting the motion to quash the present count charging aggravated obstruction of a highway based on the plea of double jeopardy resulting from the illegal verdict rendered in the previous manslaughter trial.

---

[4] Defendant was tried for conduct occurring in 1995. Prior to its amendment in 1997, La.R.S. 14:42 provided for a possible death penalty and required a unanimous verdict. After its amendment, if the death penalty was not sought by the district attorney, a 10-2 jury verdict was permissible pursuant to La.Code Crim.P. art. 782.

[5] Defendant moved to quash the indictment after remand, which was denied. The charge was amended to forcible rape thereafter and the jury deadlocked at the retrial. Defendant ultimately pled guilty to attempted forcible rape but reserved rights to appeal pre-plea errors.

7

Additionally, based on the specifics of the verdict in this case, we find the Double Jeopardy Clause to be inapplicable on other grounds as well. In *State v. Langley*, 10-969, p. 12 (La.App. 3 Cir. 4/6/11), 61 So.3d 747, 757, *writ denied*, 11-1226 (La. 1/20/12), 78 So.3d 139, *cert. denied*, 568 U.S. 841, 133 S.Ct. 148 (2012) (quoting *State v. Ingram*, 03-1246, pp. 3-4 (La.App. 5 Cir. 10/28/04), 885 So.2d 714, 716-17, *writ denied*, 04-3135 (La. 4/1/05), 897 So.2d 600), this court noted the following jurisprudence regarding the determination of whether an issue was "necessarily decided" in a prior trial:

> The Fifth Amendment's Double Jeopardy Clause protects against successive prosecutions following acquittal or conviction, as well as multiple punishments for the same offense. *See also*, LSA-Const. art. I, § 15; La.C.Cr.P. art. 591 *et seq*. The collateral estoppel component of the Double Jeopardy Clause prohibits the state from relitigating an issue of ultimate fact that has been determined by a valid and final judgment. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *State v. Cotton*, 00-0850, pp. 5-6 (La.1/29/01), 778 So.2d 569, 574, *reh'g granted in part, on other grounds*, 00-0850 (La.4/20/01), 787 So.2d 278. A fact is considered "ultimate" if it is necessary to a determination of the defendant's criminal liability. *State v. Miller*, 571 So.2d 603, 607 (La.1990).
>
> Collateral estoppel bars relitigation of only those facts necessarily determined in the first trial. *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir.1997), *cert. denied*, 522 U.S. 934, 118 S.Ct. 341, 139 L.Ed.2d 265 (1997). Where a fact is not necessarily determined in a previous trial, the state is not barred from reexamining the issue. *Id.* Accordingly, the first step in resolving a collateral estoppel claim is to discern which facts were "necessarily determined" in the first trial. *Id.*
>
> The courts have placed the burden "on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990). The application of this test to criminal cases is complicated by the fact that an acquittal by general verdict does not specify the facts "necessarily decided" by the jury. Therefore, to determine which facts were "necessarily

> decided" by the general acquittal in the first trial, it is necessary to examine the record of the prior proceeding in order to determine " 'whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' "
>
> *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194 (citations omitted).

Langley argued to this court that the doctrine of collateral estoppel prevented him from being retried for second degree murder. *Id.* at 756. In Langley's previous trial for first degree murder, the jury returned a verdict for the lesser and included offense of second degree murder. Because Langley had conceded that he killed the victim and conceded that the victim was less than twelve years old, Langley argued that the jury's return of a finding of second degree murder meant that it found that he did not have the specific intent to kill. *Id.* Consequently, Langley argued, he could not be re-prosecuted under a specific intent theory of second degree murder. After citing the jurisprudence set forth above, this court rejected Langley's collateral estoppel claim, stating the following:

> When a lesser included offense to the crime charged is returned by a jury it is not always possible to determine why that verdict was reached. It is possible that the jury convicted the defendant of specific intent second degree murder. It is possible that the jury verdict was based on a jury finding under the felony-murder rule, and the jury determined there was no specific intent to kill. It is equally plausible that, given the nature of the case, the verdict was, in fact, a compromise verdict. Regardless of the jury's thought process in this particular case, clearly the argument that the issue of specific intent was "necessarily determined" is unsupported. The defendant has not carried his burden of proving that the element of specific intent was actually decided in the previous trial.

*Id.* at 757-58.

Langley sought and was denied federal habeas relief by a federal district court in *Langley v. Prince*, 2:13-CV-2780, 2016 WL 1383466 (W.D. La. April 6, 2016). Initially, the United States Fifth Circuit Court of Appeals reversed the district court, finding:

9

The State of Louisiana is constitutionally prohibited from charging Langley with any crime having as an essential element proof beyond a reasonable doubt of Langley's specific intent to kill or to inflict great bodily harm at the moment he killed J.G.

*Langley v. Prince*, 890 F.3d 504, 531 (5th Cir. 2018).

The Fifth Circuit found that the jury in Langley's second trial acquitted Langley of any crime having an element of specific intent to kill or to inflict great bodily harm.

On October 12, 2018, however, the Fifth Circuit granted the State's petition for rehearing en banc. *Langley v. Prince*, 905 F.3d 924 (5th Cir. 2018). On rehearing, the Fifth Circuit vacated its previous opinion and affirmed the district court's denial of habeas relief. *Langley v. Prince*, 926 F.3d 145 (5th Cir. 2019), *cert. denied*, 590 U.S. __, 140 S.Ct. 2676 (2020). Although much of the Fifth Circuit's opinion is devoted to the analysis utilized when a federal court reviews a state court's application of state law, the court's application of the collateral estoppel doctrine provides guidance for the case at hand.

On rehearing, the Fifth Circuit noted that the Supreme Court has applied the issue preclusion set forth in *Ashe* in only three other cases, of which, including *Ashe*, all involved blanket acquittals.[6] Thus, the Fifth Circuit opined (but found it unnecessary to conclusively decide) that *Ashe* may not be extended to cases wherein a defendant is convicted of a lesser and included offense:

Therefore, none of these cases held issue-preclusion principles apply to a conviction. We asked the parties to identify any case extending *Ashe* to cases involving a conviction. The parties could not find a single Supreme Court case even hinting at that result. That's unsurprising. As the Supreme Court recently acknowledged, "*Ashe's* protections apply *only* to trials following *acquittals*." *Currier* [*v. Virginia*,__ U.S. __], 138 S. Ct. [2144,] 2150 [2018] (emphases added). Thus, there is no "clearly established Federal law, as determined by the Supreme Court," explaining whether and to what extent a state court should find issue preclusion following a conviction.

---

[6] *Turner v. Arkansas*, 407 U.S. 366, 369-70, 92 S.Ct. 2096 (1972) (per curiam); *Harris v. Washington*, 404 U.S. 55, 57, 92 S.Ct. 183 (1971) (per curiam); *Simpson v. Florida*, 403 U.S. 384, 386, 91 S.Ct. 18 (1971) (per curiam).

. . . .

. . . A fairminded jurist could conclude the rule clearly established in *Ashe* does not apply to a conviction rather than a general acquittal. When a jury issues a general acquittal, it necessarily determines *at least something* in the defendant's favor. It might be possible to identify that something and preclude the government from submitting it to a second jury. That task is obviously different—and more difficult—when the jury convicts the defendant on at least one count. In the face of a conviction on one count, it is not clear which issues *if any* the jury determined in the defendant's favor on that same count.

. . . The state court recognized *Ashe's* applicability to a "general acquittal." *Langley IV*, 61 So. 3d at 757 (citing *Ashe*, 397 U.S. at 444, 90 S.Ct. 1189). By contrast, where the jury returns a *conviction* on "a lesser included offense," the state court found it's "not always possible to determine" which issues if any should be precluded under *Ashe*. *Ibid.* The state court found it "possible" the jury made one of three determinations: (1) Langley was guilty of specific-intent murder, (2) Langley was guilty of something less than specific-intent murder, or (3) the jury avoided the specific-intent issue by rendering a "compromise verdict." *Ibid.* In the state court's view, Langley's argument that the jury found (2) to the exclusion of (1) and (3) was "clearly . . . unsupported." *Id.* at 758.

Even if we thought the state court committed "clear error" by so holding, we still could not grant relief. [*White v.*] *Woodall*, 572 U.S. [415,] 419, 134 S.Ct. 1697 [(2014)]. After all, neither *Ashe* nor any other Supreme Court precedent mandates that a lesser-included-offense conviction—or to use the dissent's preferred terminology, an "implicit acquittal"—be given issue-preclusive effect. And Supreme Court precedent *does* mandate caution in finding *Ashe* issue preclusion where the jury could have rendered a "compromise" or "lenity" verdict. *See United States v. Powell*, 469 U.S. 57, 65-66, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Standefer v. United States*, 447 U.S. 10, 22-23, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980); *accord Bravo-Fernandez v. United States*, — U.S. —, 137 S. Ct. 352, 363-64, 196 L.Ed.2d 242 (2016) (noting "the jurors in this case might not have acquitted on [certain] counts absent their belief that the . . . convictions [on other counts] would stand"). Therefore, a fairminded jurist could find that *Ashe's* rule regarding general acquittals does not require issue preclusion for Langley's conviction.

*Id.* at 158-59 (footnote omitted).

The Fifth Circuit noted that "[u]nder Louisiana law, 'the jury must be given the option to convict the defendant of the lesser offense, even though the evidence clearly and overwhelmingly supported a conviction of the charged offense.'" *Id.* at

161 (quoting *State v. Porter*, 93-1106 (La. 7/5/94), 639 So.2d 1137, 1140). The court noted that the jurors in Langley's prior trial were repeatedly told that second degree murder and manslaughter were the responsive verdicts to first degree murder. Consequently, the Fifth Circuit concluded, "a rational jury could have credited [the] overwhelming evidence and *still*—in accordance with the instructions and the law—returned a verdict for the lesser-included offense of second-degree specific-intent murder." *Id.*

Similarly, the jury in the present Defendant's trial was instructed of the responsive verdicts that could be rendered:

> Thus, if you are convinced beyond a reasonable doubt that the Defendant is guilty of the offense charged, your verdict should be guilty. If you are not convinced beyond a reasonable doubt the Defendant is guilty as charged of Manslaughter, then you may return a verdict for the lesser offense of Negligent Homicide.
>
> Negligent Homicide is a killing of a human being by criminal negligence.
>
> Whoever commits the crime of Criminal Negligence shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both.
>
> Thus, to convict this defendant of Negligent Homicide, you must find that:
> (1) There is a killing of a human being, Rakeem Blakes; and
>
> (2) That the killing was by criminal negligence.
>
> If the State has failed to prove beyond a reasonable doubt that the defendant is guilty of either: Manslaughter or Negligent Homicide, then the form of your verdict should be not guilty.
>
> Therefore, the verdicts that may be returned are:
>
> (1) Guilty of Manslaughter
>
> (2) Guilty of Negligent Homicide
>
> (3) Not Guilty

12

Although the jury was not specifically instructed that it could return any responsive verdict listed on the verdict sheet even if it believed the State had proved every element of the offense charged, the instructions given "appropriately informed the jury of its ability to return a responsive verdict[.]" *See State v. Coward*, 18-951, p. 13 (La.App. 3 Cir. 6/5/19) (unpublished opinion). In cases wherein a defendant has requested a specific jury instruction informing the jury of its ability to return a responsive verdict even if it believed the State proved the charged offense, the courts have found that such an instruction would "require, at the very least, qualification and certainly explanation." *State v. Sharp*, 35,714, p. 20 (La.App. 2 Cir. 2/27/02), 810 So.2d 1179, 1192, *writ denied*, 02-1736 (La. 6/6/03), 845 So.2d 1081. Thus, the courts have found that instructions like the one given in the present case adequately comply with *Porter's* requirement that the jury be given an opportunity to return a compromise verdict. *See Id.* As the Fifth Circuit found in *Langley*, a jury in Louisiana can find a defendant overwhelmingly guilty of the charged offense and still choose to convict of a responsive verdict.

Therefore, under the law and instructions applicable to Defendant's trial, the jury could have found Defendant overwhelmingly guilty of manslaughter and still, nonetheless, have chosen to convict him of the responsive verdict of negligent homicide. Furthermore, as the State argues in its writ application, the jury could have also found that Defendant committed aggravated obstruction of a highway, but that the commission of that offense was not a contributory factor in the victim's death. In *Langley*, 926 F.3d at 166, the Fifth Circuit found that the existence of multiple possibilities for the jury's verdict prohibited the court from concluding that the issue of specific intent was essential to the verdict:

> That means the jury could return its lawful second-degree murder conviction after (a) finding specific intent, (b) finding no specific intent, or (c) declining to consider the question of specific intent. To infer why

13

the *Langley II* jury convicted him only on second-degree murder "would require speculation into what transpired in the jury room," and would require us to "scrutinize" the jury's "failures to decide" rather than its actual decision. *Yeager* [*v. United States*], 557 U.S. [110,] 122, 129 S.Ct. 2360 [(2009)]. We cannot do that. The existence of three possibilities for the actual verdict means the issue of specific intent was not essential to the judgment. And since there could be no preclusion even under the broader civil preclusion rules, there certainly can be no issue preclusion under *Ashe*.

Likewise, the existence of multiple possibilities for the jury's verdict in Defendant's first trial renders any attempt to determine whether or not the jury found he committed aggravated obstruction of a highway a speculative endeavor at best. As in *Langley*, the existence of multiple possibilities for the jury's verdict in Defendant's first trial means the issue of his commission of aggravated obstruction of a highway was not essential to the jury's verdict. Consequently, we find the trial court erred in finding that the State was collaterally estopped from charging Defendant with aggravated obstruction of a highway before his second trial.

**DECREE**

For the reasons assigned, the State's writ application is granted and made peremptory, the ruling of the trial court granting the Defendant's motion to quash is reversed and the case is remanded to the trial court for further proceedings consistent herewith.

**WRIT GRANTED AND MADE PEREMPTORY; REVERSED AND REMANDED.**