694 So.2d 440 (1997)
STATE of Louisiana
v.
Lionel JACKSON.
No. 96-KA-661.
Court of Appeal of Louisiana, Fifth Circuit.
April 9, 1997.
*443 William R. Campbell, Jr., New Orleans, for Defendant/Appellant.
Paul Connick, Jr., District Attorney, Alison Wallis, Assistant District Attorney, Gretna, for Plaintiff/Appellee.
Before GAUDIN, GRISBAUM and DALEY, JJ.
DALEY, Judge.
Defendant, Lionel Jackson, appeals his conviction and sentences for armed robbery and aggravated kidnapping. On appeal, defendant raises these seven assignments of error:
1. The trial court committed reversible error by presenting the jury with a jury instruction which was clearly wrong.
2. Prosecutorial misconduct committed when the District Attorney vouched for the credibility of a state witness presents reversible error.
3. The trial court committed reversible error by failing to poll the jury regarding pre-trial and mid-trial publicity.
4. The trial court erred in refusing to suppress the identification of defendant made pursuant to a one-on-one "show-up".
5. The doctrine of double jeopardy should prevent defendant from being convicted of both second degree kidnapping and armed robbery.
6. The trial court violated defendant's constitutional rights by imposing an unconstitutionally excessive sentence.
7. The trial court erred in failing to grant defendant's Batson objection.
On December 14, 1994, the Jefferson Parish District Attorney filed a Bill of Information charging defendant, Lionel Jackson, with one count of attempted first degree murder on a peace officer (LSA-R.S.14:27:30), two counts of armed robbery (LSA-14:64), two counts of second degree kidnapping (LSA-R.S.14:44.1), and one count of aggravated burglary (LSA-R.S.14:60). Bruce Rodgers was charged as a co-defendant as to each count of the bill. Defendant was arraigned on all charges on January 13, 1995, and entered a plea of not guilty. On May 26, 1995, the State amended count one of the Bill of Information, changing the charge of attempted first degree murder to that of armed robbery. Count one of the bill, as amended by the State, was a duplicate of count six, the armed robbery of Alan Abadie. The amended Bill of Information, therefore, charged a total of only five offenses.
Defendant was tried separately before a jury of twelve on September 12 and 13, 1995. On September 13,1995, the jury returned verdicts of guilty as charged as to each of counts two through six. On September 22, 1995, the trial court sentenced defendant to serve forty years at hard labor as to both counts of second degree kidnapping, thirty years at hard labor on the single count of aggravated burglary, and ninety-nine years as to both counts of armed robbery. The court specified that defendant's sentences were to run consecutively, and *444 that the first ten years of the armed robbery sentences were to be served without benefit of parole, probation or suspension of sentence. Defendant was given credit for time served. Defendant filed a Motion for Appeal on September 22, 1995. The trial court granted defendant's motion on September 27, 1995.
The State filed a Bill of Information on September 27, 1995, alleging that the defendant was a multiple offender and alleging defendant to be a third felony offender. On May 31, 1996, the state amended the multiple bill to remove one of the predicate offenses. On the same day, the trial court held a hearing on the multiple bill, and found defendant to be a second felony offender. The trial court then set aside defendant's original sentence as to the armed robbery of Alan Abadie and resentenced defendant to serve 198 years at hard labor on that count. The judge specified that this sentence was to run consecutively to the other sentences in this case and granted defendant credit for time served.

STATEMENT OF FACTS
On the morning of September 29, 1994, several employees of a Taco Bell restaurant on Loyola Drive in Kenner opened the store for business. Among the employees on duty were Joshua Brumfield and manager trainee, David Britton. At about 9:30 a.m., Lionel Jackson and Bruce Rodgers entered the store and Mr. Britton approached the counter to take their order. Defendant pulled a semi-automatic handgun from the waistband of his pants and pointed it at Britton's face. Defendant and Rodgers jumped over the counter and ordered the employees to go into the business office. The employees complied.
On defendant's order, Rodgers tied the employees' hands with duct tape. Defendant asked Britton where the store's safe was. When Britton hesitated, defendant hit him in the back of the head with his fist. Britton then went with defendant to the front of the store and showed him the safe. Britton explained that he did not know the combination to the safe, because he was only a trainee. The manager had gone to the bank, and would be returning to the store shortly. Defendant became angry and hit Britton on the temple with the butt of the gun.
Defendant took Britton back to the office and tied him up with tape. Defendant then stated that he would have to kill one of the employees. To appease the perpetrators, Mr. Brumfield told them to take forty dollars in cash he had in his pocket. The money belonged to the restaurant and was intended for use in making change for customers. Defendant took the money, along with Brumfield's wallet. Defendant looked at the wallet, then threw it on the floor. Defendant ordered the employees to lie on the floor and stated that he and Rodgers would wait in the front of the restaurant for the manager to return. Defendant and Rodgers then exited the restaurant.
Officer Alan Abadie, a crime lab technician with the Kenner Police Department, was working on another case in the area when he heard the radio dispatch regarding the armed robbery. Abadie proceeded to Taco Bell and parked his car in back of the building. He exited his car just as defendant and Rodgers were leaving the restaurant. Defendant pushed his gun against Abadie's chest and took the officer's gun from its holster. Defendant told Abadie to run and Abadie did so. Abadie used his hand held radio to call for help as he fled the perpetrators. Once the perpetrators had left the area, Abadie returned to the restaurant and discovered that the employees were unharmed. Abadie assisted the victims in freeing themselves of the duct tape.
Defendant and Rodgers ran to defendant's black Ford Mustang, which was parked at an apartment building behind the Taco Bell. Defendant started to back out of his parking spot, but stopped when he saw several police units nearby. Defendant and Rodgers left the car and ran into a neighboring residential area. They stopped in the back yard of William and Laura Dobbs, an elderly couple residing on Holy Cross Place. Mr. Dobbs spotted the men in his yard and went outside to investigate. He saw defendant burying his gun in the vegetable garden. When Dobbs asked the men what they were doing in his yard, defendant pushed him into the house. Defendant and Rodgers also entered *445 the house and locked the door. The men told the couple that they were trying to hide from drug dealers.
The men ordered the Dobbses into the bathroom and Rodgers stood guard over them. Defendant ordered Mrs. Dobbs to put a washcloth in her mouth and told Mr. Dobbs to take off his shirt and place it in his mouth. Police officers searching the area determined that defendant and his accomplice were inside the Dobbs residence. The officers rang the doorbell and placed telephone calls to the Dobbses' house, but defendant and Rodgers prevented the couple from responding. Defendant disconnected the telephone. Defendant took off his shirt and pants and put on clothes he found in Mr. Dobbs's closet. Rodgers also put on a shirt belonging to Dobbs.
After the intruders had been there for forty-five minutes to an hour, police entered the house and placed the men under arrest. Mr. Dobbs showed the officers the place in the yard where the men had buried the gun and the officers recovered the weapon. The officers also seized seven five dollar bills from defendant's shoe. Officers transported David Britton and Joshua Brumfield, employees from Taco Bell, to the Dobbses' house and had them view defendant and Rodgers. Brumfield made a tentative identification of Rodgers, and positively identified defendant as the man who had held him and his co-workers at gunpoint. Mr. Britton was able to positively identify Rodgers, but did not make an identification of defendant. Britton testified that he did not get a good look at the gunman's face because he was looking at the gun during the incident.
Bruce Rodgers testified for the prosecution. He corroborated the testimony of the State's other witnesses. Rodgers identified defendant as the gunman in the Taco Bell robbery and testified that he and defendant had in fact gone into the Dobbses' house to hide from police.
Defendant testified at trial that he was not involved in the Taco Bell robbery. He stated Bruce Rodgers and his friend, an individual known as "Pookie", had devised a plan by which they would steal money from the home of a drug dealer in Kenner. When defendant met with Rodgers and Pookie on the morning of September 29, defendant decided not to participate in the robbery. Rodgers and Pookie told defendant they intended to go through with the plan and asked defendant to wait in his car for them. Pookie and Rodgers took defendant's gun with them. On Rodgers' request, defendant traded shirts with him.
According to defendant, Pookie and Rodgers left him, then returned some time later. It became evident to defendant that the two men had not robbed the drug dealer as planned, but had instead robbed the nearby Taco Bell. Defendant testified that he took his shirt back from Rodgers, then tried to leave the area. When he spotted police cars nearby, he left his car and fled on foot. Defendant admitted that he and Rodgers had entered the Dobbses' house to hide from police.

ASSIGNMENTS OF ERROR NUMBER ONE
By this assignment, defendant complains that the trial court's jury charge regarding reasonable doubt was constitutionally defective, in that it was misleading and precluded the jury from considering lack of evidence. Defendant did not make an objection at trial to the instruction at issue. Moreover, defense counsel stated that both he and defendant had reviewed the proposed jury charges and approved of their content, with the exception of the instruction having to do with kidnapping.
A defendant's failure to raise a contemporaneous objection to an allegedly erroneous jury charge precludes appellate review of the alleged error. LSA-C.Cr.P. arts. 801, 841; State v. Meyers, 95-750 (La.App. 5 Cir. 11/26/96), 683 So.2d 1378; State v. Wilson, 93-617 (La.App. 5 Cir. 1/25/94), 631 So.2d 1213, writ denied, 94-0476 (La.11/4/94), 644 So.2d 1046. Therefore, defendant is not entitled to raise this issue here.
Addressed on its merits, defendant's argument has no merit. LSA-C.Cr.P. art. 804 provides guidelines for the trial judge for *446 jury instructions on reasonable doubt.[1]
Defendant objects to the following charge issued by the judge in the instant case:
You are prohibited by law and your oath from going beyond the evidence to seek for reasons or doubts upon which to convict or acquit the defendant, but must confine yourselves to a dispassionate consideration of the evidence given upon the trial. Evidence includes testimony, documentary materials, physical objects or the lack of evidence. You must not resort to extraneous facts or circumstances in reaching your verdict. That is, you must not go beyond the evidence to find facts or circumstances on which to base your verdict, but must restrict yourselves to the evidence, or lack of evidence, received in the trial of this case.
It is defendant's contention that the trial court's charge was confusing, and did not adequately express to the jurors that they might consider the lack of evidence presented at trial in making a determination as to reasonable doubt. As a result, defendant argues, the jury used a lower standard of proof than that required by law. This does not appear to be the case.
The essence of Article 804 was conveyed by the judge's instruction. In State v. Mayeaux, 570 So.2d 185 (La.App. 5 Cir.1990), writ denied, 575 So.2d 386 (La.1991); and State v. Humphrey, 544 So.2d 1188 (La.App. 5 Cir.1989), writ denied, 550 So.2d 627 (La. 1989), this Court found jury charges similar to the one in this case to be acceptable. See also, State v. Washington, 522 So.2d 628 (La.App. 4 Cir.1988), writ denied, 523 So.2d 1321 (La.1988), cert. denied, Bentley v. Louisiana, 488 U.S. 834, 109 S.Ct. 94, 102 L.Ed.2d 70 (1988).
In support of his argument, defendant cites State v. McDaniel, 410 So.2d 754 (La. 1982), in which the Louisiana Supreme Court reversed the defendant's conviction based on an erroneous jury charge. The charge in the instant case is distinguishable from that in McDaniel, in that the judge in this case explicitly told the jury they could consider the lack of evidence. Considering the foregoing, this assignment of error merits no consideration.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant here complains he was prejudiced by a series of questions posed by the prosecutor to State's witness, Bruce Johnson, because through this questioning, the prosecutor improperly vouched for the witness's credibility. Defendant did not lodge a timely objection to the questions at issue, and may not, therefore, challenge them on appeal. LSA-C.Cr.P. art. 841; State v. Price, 94-214 (La.App. 5 Cir. 1/31/95), 650 So.2d 360.
In the instant case, the testimony the prosecutor elicited from Mr. Rodgers was merely a repetition of the promises he made when taking an oath to tell the truth. The prosecutor did not vouch for Rodgers' credibility.
Defendant also cites State v. Oliver, 94-1642 (La.App. 4 Cir. 10/9/96), 682 So.2d 301, in support of his argument. The facts of that case, however, are distinguishable from the facts herein. In Oliver, the court reversed the defendant's convictions for armed robbery and second degree murder, primarily because it found the State had improperly withheld exculpatory evidence which the defense could have used to impeach an important State witness. In addition to withholding this evidence, the prosecutor had repeatedly vouched for the credibility of this witness in closing argument. The Oliver court found that the cumulative effect of *447 these errors deprived the defendant of his constitutional right to a fair trial. Such was not the case herein. Based on the foregoing, this assignment has no merit.

ASSIGNMENT OF ERROR NUMBER THREE
The trial court committed reversible error by failing to poll the jury regarding pre-trial and mid-trial publicity.
Defendant here contends that he was prejudiced by the trial court's failure to question jurors about an article published in the Times-Picayune newspaper on the morning of the second day of trial. Defendant alleges this article recounted testimony from the first day of trial, as well as information about defendant's recent escape from the parish jail. The trial court admonished jurors at the close of the first day's proceedings that they were to avoid any media accounts of the trial. Defendant argues, however, that the jurisprudence required the trial court to question jurors on the second day about any news accounts of the trial they might have seen.
Again, defendant improperly raises an issue on appeal for which there was no contemporaneous objection at trial. Moreover, defendant makes reference to a newspaper article which is not part of this record and, therefore, cannot be considered by this Court. This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The trial court erred in refusing to suppress the identification of defendant made pursuant to a one-on-one "show-up".
On January 13, 1995, defendant filed a Motion to Suppress Identification. The court heard and denied the motion on September 11, 1995. By this assignment, defendant complains that the trial court erred in denying his Motion to Suppress, as the face-to-face identifications made by witnesses, Joshua Brumfield and David Britton, were suggestive.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Walker, 576 So.2d 1202 (La.App. 5 Cir.1991); State v. Williams, 536 So.2d 773 (La.App. 5 Cir.1988), writ denied, 95-1325 (La.11/13/95), 662 So.2d 465. It is the defendant's burden, when challenging an identification procedure, to show that there was a substantial likelihood of misidentification as a result of said procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Williams, supra.
One-on-one identifications are generally not favored, but are permissible when justified by the overall circumstances. This is particularly true where the accused has been apprehended shortly after the commission of the crime and has been returned to the crime scene. State v. Walters, 582 So.2d 317 (La.App. 4 Cir.1991), writ denied, 584 So.2d 1171 (La.1991). In Manson v. Brathwaite, 432 U.S. at 116, 97 S.Ct. at 2253-2254, the United States Supreme Court set out five factors to be considered in determining whether an identification gave rise to a substantial likelihood of misidentification:
1) The witness's opportunity to view the criminal at the time of the crime;
2) The degree of attention paid by the witness during the commission of the crime;
3) The accuracy of any prior description;
4) The level of certainty demonstrated at confrontation; and
5) The time between the crime and the confrontation.
See also, State v. Martin, 595 So.2d 592 (La.1992); State v. Williams, supra.
Based on the above criteria, the identifications at issue were properly admitted at trial. Twenty to thirty minutes after the commission of the robbery, a police officer took robbery victim, Joshua Brumfield, around the area of the Taco Bell in a police cruiser. Brumfield was instructed to tell the officer if he spotted the two perpetrators. Brumfield saw a man riding a bicycle, but told the officer the man was not one of the robbers. A short while later, Det. Keith Pepitone drove Brumfield to the Dobbses' *448 house. Brumfield was asked to view defendant and Rodgers. Without any prompting from officers, Brumfield made a positive identification of defendant as the gunman in the robbery. Brumfield tentatively identified Rodgers as the co-perpetrator. Brumfield had ample opportunity to observe defendant during the robbery and the identification was made about an hour after the commission of the crime. Brumfield also made positive in-court identifications of defendant.
Officer James Gallagher transported David Britton to Holy Cross Place to view defendant and Rodgers. Without prompting by the officer, Britton was able to make a positive identification of Rodgers. Britton testified he could not identify defendant as the gunman, as he did not get a good look at the gunman's face during the robbery. Like Brumfield, Britton made the identification a short time after the commission of the crime.
At trial, the identifications made by Brumfield and Britton were supported by the testimony of Officer Abadie, who observed defendant and Rodgers exiting the Taco Bell. The identifications were also supported by the testimony of co-defendant, Bruce Rodgers. Given the foregoing, it does not appear there was a substantial likelihood of misidentification. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER FIVE
The doctrine of double jeopardy should prevent defendant from being convicted of both second degree kidnapping and armed robbery.
Defendant contends that double jeopardy bars his convictions for both second degree kidnapping and armed robbery. The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. See also LSA-C.Cr.P. art. 591. Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal act. Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); State v. Washington, 95-771 (La.App. 5 Cir. 2/14/96), 670 So.2d 1255.
Louisiana courts have used two tests in examining violations of double jeopardy. The "distinct fact" test, commonly referred to as the Blockburger test, is taken from the United States Supreme Court's holding in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In State v. Knowles, 392 So.2d 651, 654 (La.1980), the Louisiana Supreme Court outlined the Blockburger criteria for examining violations of double jeopardy:
... the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...
The second test is the "same evidence" test. In State v. Steele, 387 So.2d 1175 (La. 1980), the Louisiana Supreme Court explained that test as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...
The "same evidence" test is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
Id. at 1177. Although the Louisiana Supreme Court has accepted both the Blockburger test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. State v. Miller, 571 So.2d 603, 606 (La.1990).
The second degree kidnapping statute, LSA-R.S. 14:44.1, provides, in pertinent part:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;

*449 (2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Defendant contends that subsection (2) is the only subpart under section A which is supported by the evidence at trial. Defendant further urges that because the armed robbery is an essential element to be proven under subpart (2), his convictions for armed robbery and second degree kidnapping constitute double jeopardy.
Considering the evidence at trial, it appears defendant's case fits more squarely under subsection (A)(1).[2] Defendant did not use Mr. and Mrs. Dobbs to facilitate the commission of the armed robberies at Taco Bell or to escape from the scene of the robberies. Rather, defendant used the couple as "shields" to avoid capture by police.
Defendant argues that subsection (A)(1) of the statute is not applicable in this case, since Mrs. Dobbs testified on cross-examination that she was not a hostage. Defense counsel asked her if the defendant used her as a shield between himself and the police, to which she replied no. Defendant is, in effect, asserting that a hostage or shield situation can only result from a direct confrontation between the kidnapper and police. However, the proven facts in the instant case are compatible with the commonly held meanings of the words hostage or shield. Defendant and Rodgers entered the Dobbs residence by force and locked the door to prevent escape. The two men gagged the couple and confined them to the bathroom.
Defendant testified that he heard officers' attempt to gain entry to the house. He also testified that he would not allow the Dobbses to answer their telephone. When Mrs. Dobbs asked whether she could call police, defendant refused. Defendant clearly used the couple to avoid capture by the police. The testimony of Sgt. Louis Tusa shows that he and other officers tracked defendant and Rodgers to the Dobbs residence, but delayed attempts to capture the men because they feared the Dobbses were being held inside.
Defendant cites State v. Rhodes, 95-54 (La.App. 5 Cir. 6/28/95), 657 So.2d 1373, in support of his argument. In that case, this Court found the defendant's convictions for armed robbery and second degree kidnapping constituted double jeopardy. Although the opinion in Rhodes is silent as to which section of the statute was involved, it is clear from the facts that the case concerned subsection (2).
Notwithstanding Mrs. Dobbs's opinion, the facts adduced show that defendant's conviction fits squarely under Section A(1) of the kidnapping statute and thus does not constitute double jeopardy. The kidnapping of the Dobbses was not used to facilitate the commission of the armed robberies at the Taco Bell. Nor were the Dobbses used for flight, as the defendants had already fled the robbery scene and were at that time seeking to hide from police. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER SIX
The trial court violated defendant's constitutional rights by imposing an unconstitutionally excessive sentence.
Defendant here complains that the trial judge abused her discretion in imposing the maximum sentences as to each of his convictions *450 and in ordering that each of his sentences be served consecutively.
It appears that defendant is procedurally barred from challenging four of his five sentences under LSA-C.Cr.P. art. 881.[3]
In following the provisions of Article 881.1, this Court has found that defendants who fail to file the proper Motion to Reconsider Sentence are precluded from raising on appeal issues regarding their sentences. State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642; State v. Hutson, 613 So.2d 1134 (La.App. 5 Cir.1993); State v. Carter, 609 So.2d 261 (La.App. 5 Cir.1992). See also, State v. Mims, 619 So.2d 1059 (La.1993), writ denied, 93-2933 (La.2/11/94), 634 So.2d 373.
At his initial sentencing, defendant did not lodge an oral objection to his sentences. Nor did defendant file a written Motion to Reconsider Sentence. Counsel did, however, lodge an oral objection to his enhanced armed robbery sentence, arguing that the sentence of 198 years was excessive. It is noted that in State v. Mims, supra, the Louisiana Supreme Court was silent as to whether the failure to comply with Article 881.1 precludes even a claim of constitutional excessiveness. In an abundance of caution, then, the substance of defendant's claims as to each of the sentences is considered below.
Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, Art. I, Sect. 20. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Munoz, 575 So.2d 848 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence will not be set aside absent showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Bradham, 94-71 (La.App. 5 Cir. 5/31/94), 638 So.2d 428.
The trial court sentenced defendant to the maximum allowed by law on each of the convictions. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged, and the worst type of offender. State v. Guzman, 95-444 (La.App. 5 Cir. 11/15/95), 665 So.2d 512, writ denied, 95-2853 (La.2/28/96), 668 So.2d 366; State v. Jones, 94-383 (La.App. 5 Cir. 10/25/94), 645 So.2d 773, writ denied, 94-2826 (La.3/10/95), 650 So.2d 1175).
In imposing defendant's initial sentences, the trial court considered "the multiplicity of crimes; [T]he fact that defendant exhibited deliberate cruelty to the victims and placed them in fear of their lives; and [T]he fact that the defendant showed no remorse on his testimony on the stand." The judge further stated, "While the Court recognizes that the sentence is severe, the Court feels that it is commensurate with the gravity of the offenses committed."
The reasons given by the judge are amply supported by the record. Defendant placed the Taco Bell employees in fear for their lives and physically attacked victim David Britton. Defendant robbed a police officer and then proceeded to terrorize the elderly Dobbses. In his testimony, defendant admitted to having held the Dobbses against their will. Defendant also had prior *451 felony convictions. It does not appear the trial judge abused her wide discretion in imposing the maximum sentences on each count.
Under circumstances comparable to those in the instant case, the State's courts have found excessive the imposition of the maximum sentences for armed robbery. State v. George, 26,867 (La.App. 2 Cir. 4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855; State v. Dozier, 553 So.2d 931 (La.App. 4 Cir.1989), writ denied, 558 So.2d 567 (La.1990); State v. Isaac, 487 So.2d 565 (La.App. 4 Cir.1986), writ denied, 530 So.2d 80 (La.1988).); second degree kidnapping (State v. Washington, 95-771 (La. App. 5 Cir. 2/14/96), 670 So.2d 1255)); and aggravated burglary (State v. Lennon, 95-0402 (La.App. 4 Cir. 9/15/95), 661 So.2d 1047, writ denied, 95-3004 (La.3/22/96), 669 So.2d 1222, cert. denied, ___ U.S. ___, 117 S.Ct. 152, 136 L.Ed.2d 97 (1996); State v. Conners, 577 So.2d 273 (La.App. 3 Cir.1991); State v. Grillette, 588 So.2d 1338 (La.App. 2 Cir. 1991).
The trial court imposed the maximum enhanced sentence of 198 years for the armed robbery of Officer Abadie. In State v. Gordon, 582 So.2d 285 (La.App. 1 Cir.1991), and State v. Jones, 560 So.2d 590 (La.App. 5 Cir.1990), the same sentence was found not to be excessive where defendants convicted of armed robbery were found to be second felony offenders. In State v. Rhodes, supra, the defendant was sentenced consecutively to 99 years each on two counts of armed robbery. The facts in the instant case support the sentence imposed.
It does not appear the trial court abused its discretion in ordering defendant's sentences to be served consecutively. LSA-C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
In the instant case, the aggravated burglary and the two second degree kidnappings were part of the same transaction and thus there was a "presumption" of concurrent sentences under the article. However, the judge did not err in using the discretion allowed under the article to make defendant's sentences consecutive. Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. Consecutive sentences are justified when the offender poses an unusual risk to public safety. State v. Kennedy, 93-776 (La.App. 5 Cir. 1/25/94), 631 So.2d 1195. In the instant case, the trial court appears to have considered defendant to be such a public risk.

ASSIGNMENT OF ERROR NUMBER SEVEN
The trial court erred in failing to grant defendant's Batson objection.
Defendant here complains that the State's use of a peremptory challenge to excuse prospective juror, Stella Williams, was discriminatory and violative of his right to a fair trial. Defendant further asserts that the trial court erred in denying his objection to the State's peremptory challenge.
Equal protection guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. U.S. Const. Amend. 14; Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, supra. On a Batson claim that the prosecutor has used peremptory challenges in a manner violative of the Equal Protection Clause, a defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on *452 the basis of a juror's cognizable racial background.[4]
If a prima facie case is established, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, 476 U.S. at 96-98, 106 S.Ct. at 1722-1724; State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272.
The Batson criteria are codified in LSA-C.Cr.P. art. 795.
The record in the instant case indicates there was one black venireperson, a Ms. McGowen, in the first panel of prospective jurors. The State used a peremptory challenge to excuse her and the defendant immediately raised a Batson challenge. The court pointed out that because she was the first black juror to be excused, the defense could not show a systematic pattern of discrimination. Counsel stated that he nevertheless wished his objection to be noted for the record. A second black venireperson was subsequently seated on the jury.
When the State used a peremptory challenge to excuse the third black venireperson, Williams, defense counsel again raised a Batson objection. The trial judge did not specifically rule on whether the defense made a prima facie case of discrimination, but instead allowed the State to respond to the objection by offering race-neutral reasons for its peremptory challenge.[5] The prosecutor stated that Williams was older, and seems like she is a grandmother and he believed she would be likely to be compassionate towards the defendant and either vote for a lesser charge or disregard the evidence. Furthermore, the prosecutor stated that he believed he knew the woman; that he might have prosecuted one of her children before, but that he couldn't put his finger on it. Williams denied knowing the prosecutor (Supp. at 127).
In making a Batson challenge to the state's use of peremptory challenges, the defense may offer such facts as a pattern of strikes made by the prosecutor against members of a suspect class, actions or statements made by the prosecutor which tend to show the peremptory challenges were racially motivated and the final composition of the jury. State v. Green, 655 So.2d at 288. In the instant case, defense counsel did not present any argument in support of his objection. He simply stated that he was lodging an objection "for the record." Additionally, counsel failed to establish a pattern of purposeful discrimination on the part of the State. See State v. Alas, 622 So.2d 836 (La.App. 5 Cir.1993), writ denied, 629 So.2d 397 (La.1993). Finally, the defense did not indicateand the record does not show that the prosecutor said or did anything during voir dire to indicate discriminatory intent. There is, in short, nothing in the record to indicate that the state systematically excused black venirepersons on the basis of race.
If the defendant is unable to make a prima facie case of purposeful discrimination in the prosecutor's use of peremptory challenges, the Batson challenge automatically fails and it is not necessary for the State to offer race-neutral explanations. State v. Green, supra. This Court, therefore, need not consider the question of whether the explanations offered by the prosecutor in the instant case were in fact race-neutral. Based *453 on the foregoing, this assignment of error has no merit.

ERROR PATENT REVIEW
LSA-C.Cr.P. art. 930.8 dictates that, except under certain limited circumstances, a defendant must file his Application for Post Conviction Relief within three years after his judgment of conviction. Section (C) of that article provides: "At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." Neither the transcript of the original sentencing nor the multiple offender sentencing shows that the trial court apprised defendant of the three-year time period under Article 930.8. The trial court may remedy this error by sending written notice to defendant within ten days of the rendering of this opinion and then filing written proof in the record that defendant received such notice. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289; State v. Procell, 626 So.2d 954 (La.App. 3 Cir.1993); State v. Sumlin, 605 So.2d 608 (La.App. 2 Cir.1992).
The trial court properly granted defendant credit for time served at the time of his initial sentencing. Additionally, the commitment as to defendant's enhanced sentence reflects that the trial court gave credit for time served. However, the transcript of the multiple bill proceeding does not show that the court granted credit for time served with regard to defendant's enhanced sentence. Generally, where there is a discrepancy between the minute entry and the transcript, the transcript will prevail. State v. Lynch, 441 So.2d 732 (La.1983). This is not a reversible error. It may be corrected by an instruction to the trial court to amend the record to reflect the proper compliance with LSA-C.Cr.P. art. 880.
Accordingly, the convictions and sentence are affirmed, and the matter remanded for the trial court to inform defendant of the provisions of LSA-C.Cr.P. art. 930.8.
AFFIRMED, AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] A. In all cases the court shall charge the jury that:

(1) A person accused of crime is resumed by law to be innocent until each element of the crime, necessary to constitute guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
[2] It is noted that the trial judge instructed the jury as to each section of the statute.
[3] A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.

(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
* * * * * *
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
[4] In determining whether the defendant has established a prima facie case of discrimination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against minority jurors, and any questions or statements by the prosecutor during voir dire examination or in the exercise of his challenges which may support or refute an inference of purposeful discrimination. Batson v. Kentucky, 476 U.S. at 98, 106 S.Ct. at 1722-1723; State v. Collier, 553 So.2d 815, 819 (La. 1989); State v. Nieves, 94-553 (La.App. 5 Cir. 3/15/95), 653 So.2d 680.
[5] In State v. Green, supra, the Louisiana Supreme Court held that the trial court's demand that a prosecutor justify the use of peremptory challenges is tantamount to a finding that the defendant has offered enough evidence to support an inference of discrimination.