CLARENCE E. McMANUS, Judge.
|2The defendant, William Anderson, was convicted of two counts of sexual battery (counts one and two), one count of oral sexual battery (count three), and one count of molestation of a juvenile (count four), violations of LSA-R.S. 14:43.1, LSA-R.S. 14:43.3, and LSA-R.S. 14:81.2 respectively.
On March 23, 2010, the trial court ordered the defendant to serve ten years imprisonment on count one and count two. The court indicated that the sentence on count two would be served at hard labor, but did not indicate that the sentence on count one would be served at hard labor. As to counts three and four, the trial court ordered the defendant to serve fifteen years at hard labor on each count. The trial court ordered that all sentences were to be served without benefit of probation, parole, or suspension of sentence. The trial court additionally ordered that all sentences were to run consecutively as to each other and consecutively with the defendant’s seven-year sentence in 24th Judicial District Court case number 08-1207, division “M”.
Defendant appeals his conviction and sentence. In his appeal he contends that his convictions violate the principles of double jeopardy, that the trial court erred in denying his Motion to Quash, and that his sentence is illegal and excessive.
In addition, our review of the record also notes a potential double jeopardy issue. Accordingly, we ordered all parties to brief this issue. However, after Lcareful consideration we find that the principles of double jeopardy were not violated.
FACTS
Detective Jo Lynn Cummings of the Jefferson Parish Sheriffs Office testified that she had an occasion to participate in two separate investigations involving the defendant. One investigation involved allegations of a sexual nature made by S.A.[1] The second investigation involved allegations by L.L.P.[2]. Detective Cummings investigated S.A.’s allegations further and conducted a photographic lineup with L.L.P. L.L.P. positively identified the defendant. As a result of Detective Cummings’s findings, the defendant was placed under arrest and charged with two counts of sexual battery, one count of oral sexual battery, and one count of molestation of a juvenile against L.L.P.
L.L.P. testified that, at the time of trial, she was twenty-nine years old. She indicated that she could not recall at what age she met the defendant, but it was “for sure by second grade.” L.L.P. knew the defendant because the defendant was her grammar school bus driver until she graduated in the eighth grade. In the spring of 1995, when L.L.P. was fourteen, she began to have more regular interaction with the defendant. This occurred because the defendant was involved in providing music for Westbank Mardi Gras parades and L.L.P. was captain of her cheerleading team.
The defendant and L.L.P. began talking over the telephone regularly about music. After Mardi Gras ended, the phone conversations became more personal; the defendant began to ask about L.L.P.’s family. L.L.P. thought that talking to the defendant placed her “in the cool crowd.” Eventually, the relationship progressed: the defendant “would jiggle his keys if he was walking by my classroom. He | ¿would *1083 find excuses to come in and look at the AC vents or something in my different classes. He began leaving notes in my locker, ‘Hey, you look great today, smile,’ different things like that.” One day, the defendant “got real close” to L.L.P. and told her that he wanted to give her a kiss, paused, and then handed her a Hershey’s Kiss. At that point, L.L.P. “realized that I was special and that something was going on.”
In May of 1995, L.L.P.’s parents allowed her to accompany the defendant to a recording studio so she could play piano on a song the defendant wrote. At the studio, the defendant became emotional about the fact that L.L.P. would be graduating from grammar school shortly. The defendant did not bring L.L.P. directly home. Rather, the defendant took L.L.P. to his home off the Lafitte Larose Highway, ostensibly to show L.L.P. his “band room” and his waterbed. Shortly after arriving at the defendant’s home, L.L.P. spontaneously jumped onto the waterbed. The defendant then placed his hand on L.L.P.’s back in a way that made L.L.P. feel uncomfortable. L.L.P. got up from the waterbed and went into the hallway between the defendant’s living room and kitchen. The defendant followed L.L.P., told her that he had fallen in love with her, and kissed her. L.L.P. described the kiss as a “kiss like in the movies” and “an adult kiss.”
During the drive home the defendant told L.L.P. that they were going to be in “an adult relationship” that, if exposed, would result in his six-year-old daughter becoming homeless. L.L.P. thereafter began sneaking out of her house at night to spend time with the defendant after her parents had fallen asleep. L.L.P. and the defendant began watching R-rated movies together and fondling each other through clothing. L.L.P. testified that the movies gradually became more “X rated” and the “make-out sessions would increase little bit by little bit.” L.L.P. |sfurther explained that the kissing and fondling progressed from “rubbing me with my clothes on” to “shirt off’ to “no bra” to “just panties.”
L.L.P. testified that she began to have sex with defendant in the summer of 1995, when she was fourteen years old. L.L.P. testified that she and the defendant also engaged in oral sex on each other and that the defendant penetrated her digitally. L.L.P. indicated that her relationship with the defendant continued until just after she turned sixteen.
One night, after the defendant had picked up L.L.P., the defendant’s vehicle was stopped by a Jefferson Parish Sheriffs Office deputy on Manhattan Boulevard. After L.L.P. gave the officer her phone number, her parents were called. L.L.P. lied and told her parents that she was merely listening to a compact disc with the defendant.
L.L.P. admitted that she had not made a complaint to police until she learned about the defendant’s relationship with S.A. She testified that it “came to [her] attention that he was with another fourteen year old and frankly I felt responsible for her.”
D.L., L.L.P.’s father, confirmed that police contacted him one night and told him that they “had [L.L.P.] in [the defendant’s] car.” D.L. also confirmed L.L.P.’s testimony that the defendant visited L.L.P. in the hospital when she had her appendix removed.
R.P., L.L.P.’s husband, testified that L.L.P. told him that she had been sexually abused by a man named “Billy” when she was younger.
Evidence of defendant’s relationship with S.A. was also admitted at trial. D.A., S.A.’s mother, testified that she had previously lived next door to the defendant and his family. D.A. indicated that her late husband, who passed away on March 24, *1084 2007, had been very close friends with the defendant. When her | ^father passed away, S.A. was 15 years old. According to D.A., after her husband passed away, she became concerned at the nature of the relationship the defendant had with S.A. D.A. testified that “events evolved to the point where [she] believed that it was appropriate to seek a protective order” against the defendant. D.A. also confirmed that the purpose of the protective order was to preclude defendant from having contact with S.A. or her brother.
On November 3, 2007, when S.A. was sixteen years old, D.A. looked into S.A.’s closet for the purpose of gathering clothes to assist her in packing for a trip to Washington, D.C. D.A. noticed that the closet was in disarray and began to straighten it out. When she grabbed a duffle bag on the floor of the closet, D.A. felt what she “knew instantly was a body.” At first, D.A. thought that her son might be playing a trick on her and D.A. told him to exit the closet. However, a man D.A. immediately recognized as the defendant then “jumped out of the closet with a bag over his head” and fled the residence through the back door. D.A. called the police. The defendant was apprehended shortly thereafter.
S.A. testified that, at the time of trial, she was eighteen years old and a freshman in college. S.A. indicated that she first met the defendant when she was 15 years old. S.A. described the defendant as her father’s “best friend” and noted that she was friends with the defendant’s children. In the months before her father died, S.A. and the defendant began talking frequently on the telephone. S.A. testified that on New Year’s Eve 2006 the defendant kissed her on the lips. She described the kiss as “more than a friendly kiss.” S.A. felt that she was doing something wrong, but also that she “wanted to do it anyway” and “liked where it was going.” According to S.A., the primary reason that she was in close contact with the defendant is because she was concerned for her father’s well-being during his illness and the defendant offered moral support to her. After her father passed |7away, the relationship between S.A. and the defendant changed. They began talking more and started meeting at a Belle Chasse Panda King parking lot to kiss. S.A. and the defendant were both afraid that they would get caught. S.A. described how she would enter the defendant’s car and engage in French kissing.
On the evening of November 2, 2007, S.A. let the defendant into her mother’s home. According to S.A., her mother was at church and was planning on attending a party afterwards. S.A. and the defendant did not have sex, however, they spent the evening sitting in the closet kissing, talking, and hugging.
The trial court then allowed an employee of the Jefferson Parish District Attorney’s Office to read into the record a prior statement that the defendant made while under oath. In that statement, the defendant indicated that he engaged in phone conversations with S.A., that he knew S.A.’s cell phone number, that he knew R.A. had obtained a restraining order against him, and that he met with S.A. in violation of the restraining order. The defendant acknowledged that R.A. had discovered him in S.A.’s closet. The defendant insisted that he only initiated contact with S.A. when she called him and he missed the call and that he violated the terms of the restraining order because he was a “good Samaritan ... concerned about [S.A.’s] stability.” He additionally admitted lying to his former wife when she caught him talking to S.A.

*1085
ANALYSIS

In his second counseled assignment of error, the defendant contends that he received an “illegal” sentence. More specifically, the defendant contends that he received an illegally excessive fifteen year sentence on the molestation of a juvenile conviction because the State failed to demonstrate that he had “control or supervision” over the juvenile. The defendant correctly notes that the maximum sentence for a molestation of a juvenile conviction that does not involve “control or ^supervision” over a juvenile is ten years and that the statute provides for an increased penalty when the molestation was committed by an offender who had control or supervision over the juvenile.
Although he alleges that his sentence is excessive, it appears that defendant is alleging that the evidence presented was, at best, sufficient to convict him of a charge of molestation that does not involve control or supervision, and not the charge of molestation of a juvenile when the offender has control or supervision over the juvenile. Essentially, defendant contends that the State failed to prove an element of the charged offense. See, e.g., State v. A.B.M., 2010-648 (La.App. 3 Cir. 12/8/10), 52 So.3d 1021,1025-26 (treating defendant’s contention that State failed to prove that he had requisite “control or supervision” over a juvenile in a molestation of a juvenile case).
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. Therefore, the sufficiency of the evidence is addressed first.
The constitutional standard for testing the sufficiency of evidence requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, |9in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The rule as to circumstantial evidence is that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
The elements of the crime of molestation of a juvenile when the offender has control or supervision over the juvenile are (1) whether the defendant committed a lewd or lascivious act upon the person or in the presence of the victim — and if he did, (2) whether the act was committed with the intention of arousing or gratifying his sexual desires or those of his victim; and (3) whether the act was committed by *1086 the use of (a) force, violence, duress, menace, psychological intimidation, or threat of great bodily harm, or (b) influence by virtue of a position of control or supervision over the victim[3].
|1(lIn this case, L.L.P. testified that she and the defendant engaged in digital penetration, oral sex, and penile/vaginal intercourse while they were alone in his home. The defendant asked for and received permission from D.P. to drive L.L.P. to the recording studio where he was recording music. The defendant drove L.L.P. to his home in Marrero. The defendant subsequently had L.L.P. cut her window screen for the purpose of picking her up in the middle of the night. The defendant provided L.L.P. with alcohol and pornography when he was the only adult present.
In addition, the defendant exercised a significant level of emotional control over L.L.P. The defendant was in a position of trust and authority relative to L.L.P. The defendant told L.L.P. that if she revealed the nature of their relationship to anyone, he would have to go to jail and his daughter would be homeless. Accordingly, we find that the State demonstrated that the defendant had “control or supervision” over L.L.P. Compare State v. Onstead, 03-1413 (La.App. 5 Cir. 5/26/04), 875 So.2d 908. Therefore the evidence was sufficient to support defendant’s conviction. This allegation of error is meritless.
In his third counseled assignment of error, the defendant contends that his sentences were excessive. In addition, in his second pro se assignment of error, the defendant contends that the trial court erred in sentencing him to consecutive sentences. Because we find error patent which warrants a vacation of defendant’s sentences and a remand for resentencing, see error patent discussion infra, we do not reach these issues raised. See by analogy State v. Colbert, 04-538, (La.App. 5 Cir. 11/30/04), 889 So.2d 1128, 1134.
In his first counseled assignment of error, the defendant contends that it “was error to deny the Motion to Quash as the prosecution was so untimely as to have denied appellant his right to a speedy trial and fundamental due process, in violation of La. Const. Art. I, § 16 and the Sixth Amendment to the Constitution of Inthe United States.” The defendant correctly notes that at the time that the offenses *1087 were committed, the bill of information was filed, LSA-C.Cr.P. art. 571.1 provided:
The time within which to institute prosecution of the following sex offenses: forcible rape (R.S. 14:42.1), sexual battery (R.S. 14:43.1), aggravated sexual battery (R.S. 14:43.2), oral sexual battery (R.S. 14:43.3), aggravated oral sexual battery (R.S. 14:43.4), carnal knowledge of a juvenile (R.S. 14:80), indecent behavior with juveniles (R.S. 14:81), molestation of a juvenile (R.S. 14:81.2), crime against nature (R.S. 14:89), or aggravated crime against nature (R.S. 14:89.1), which involves a victim under seventeen years of age, regardless of whether the crime involves force, serious physical injury, death, or is punishable by imprisonment at hard labor shall be ten years. This ten year period begins to run when the victim attains the age of seventeen.
The defendant is also correct in his assertion that 2005 La. Acts 186 § 1 altered LSA-C.Cr.P. art. 571.1, such that the codal article now reads:
Except as provided by Article 572 of this Chapter, the time within which to institute prosecution of the following sex offenses: sexual battery (R.S. 14:43.1), second degree sexual battery (R.S. 14:43.2), oral sexual battery (R.S. 14:43.3), felony carnal knowledge of a juvenile (R.S. 14:80), indecent behavior with juveniles (R.S. 14:81), molestation of a juvenile (R.S. 14:81.2), crime against nature (R.S. 14:89), aggravated crime against nature (R.S. 14:89.1), incest (R.S. 14:78), or aggravated incest (R.S. 14:78.1) which involves a victim under seventeen years of age, regardless of whether the crime involves force, serious physical injury, death, or is punishable by imprisonment at hard labor shall be thirty years. This thirty-year period begins to run when the victim attains the age of eighteen.
In State v. Ferrie, 243 La. 416, 144 So.2d 380 (1962), abrogated on other grounds by State ex rel. Olivieri v. State, 2000-0172 (La.2/21/01) 779 So.2d 735, the Louisiana Supreme Court rejected the defendant’s argument that the application of a time period for instituting prosecution, which was extended after the commission of the charged offense, violated the ex post facto provisions of the United States and Louisiana Constitutions. The factual situation presented in Feme is similar to that in the instant case. The defendant in Feme was charged with indecent behavior with juveniles occurring on March 26, 1960. At the time of that offense, the applicable prescriptive period was one year after the offense was made known. 112By Act 25 of 1960, effective July 27, 1960, the applicable prescriptive period was increased to two years. The defendant was subsequently charged by bill of information filed on December 15, 1961, more than one year after the offense was made known but less than two years after the offense was committed. In determining that Act 25 was not an ex post facto law, the Supreme Court made the following observations:
As we understand this case the substantial rights of the accused had never vested, for the time limitation or prescription of the offense which was in effect at the date of the alleged commission of the offense had not fully run when the amendment became effective.
* * *
[T]he State in criminal matters reserves the right to change the prescription or period of limitation of criminal offenses until it has accrued to the benefit of the accused. Until it has accrued, it can be said, the rights of the accused have not become vested and are subject to regulation or change.
*1088 But when a right of grace has been extended the State relinquishes the right to prosecute once the statute of limitations has run; until it does run, the State’s right to prosecute is retained and may be extended at the will of the State.
No substantial right of the accused is affected by such a change, nor has the situation been changed to the disadvantage of the accused, for the time during which he may be prosecuted, not having run, deals only with the procedure attached to his conviction or acquittal. The penalty of the offense has not been changed to the disadvantage of the accused, the rules of evidence have not been amended, nor has the definition of the crime affecting the facts been altered in any way. What has been altered is a procedural right, and no undue disadvantage to the accused results therefrom for he has acquired no advantage until the period of limitation has run.
Id. at 383-84.
In State v. Adkisson, 602 So.2d 718 (La. 1992), the Louisiana Supreme Court reaffirmed the Feme rule. Adkisson recognized that the legislature could amend LSA-C.Cr.P. art. 573 and extend the time limit within which the State could institute prosecution, but only as long as the amendment came into effect before |1sthe statute of limitations accrued.[4] Id. at 719.
Here, the record indicates that L.L.P. was born on January 11,1981. She turned 17 on January 11, 1998. The State originally had ten years from January 11, 2008 to file charges against the defendant. However, before the ten year period expired, the legislature extended the applicable prescriptive period to thirty years after L.L.P. turned seventeen, or January 11, 2028. Thus, the institution of charges on May 1, 2009 was timely. Compare State v. Romero, 96-777 (La.App. 3 Cir. 3/5/97), 692 So.2d 609. There was no error in the denial of defendant’s motion to quash.
In his pro se assignment of error, the defendant contends that he was subjected to double jeopardy. More specifically, the defendant contends that “convictions for Sexual Battery, Oral Sexual Battery and Molestation of Juvenile arising from the set of facts, is unconstitutional because it violates fundamental due process by imposing multiple punishments for a single act.” This Court ordered the State and defense counsel to brief the issues.
Even though the defendant did not raise a double jeopardy violation in the court below, “[djouble jeopardy can be raised at any time, but only once.” LSA-C.Cr.P. art. 594; see also State v. Gordon, 00-1013, (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 149-50, writs denied, 02-0362 (La.12/19/02), 833 So.2d 336, 02-0209 (La.2/14/03), 836 So.2d 134 (holding that the defendant could raise double jeopardy on appeal when he did not raise the issue in the trial court). While the defendant failed to file a motion to quash, this is the first time he has raised the issue. Thus, the assignment of error is properly before this Court on appeal.
_J^The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. LSA-C.Cr.P. art. 591 provides:
*1089 No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
“Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal act.” State v. Jackson, 96-661 (La. App. 5 Cir.4/9/97), 694 So.2d 440, 448, writ denied, 97-1050 (La.10/13/97), 703 So.2d 609, writ denied, 97-1255 (La.10/13/97), 703 So.2d 612. “Louisiana has not adopted a ‘same transaction’ test which would prohibit, on double jeopardy grounds, prosecutions for different crimes committed during one sequential, continuing course of conduct.” Id.
In Jackson, supra, this Court explained the two tests used by the Louisiana courts when examining double jeopardy violations as follows:
The “distinct fact” test, commonly referred to as the Blockburger test, is taken from the United States Supreme Court’s holding in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In State v. Knowles, 392 So.2d 651, 654 (La.1980), the Louisiana Supreme Court outlined the Block-burger criteria for examining violations of double jeopardy:
... the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ...
Id. at 448
The second test is the “same evidence” test. In State v. Steele, 387 So.2d 1175 (La.1980), the Louisiana Supreme Court explained that test as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only | iaone. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...
The “same evidence” test is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
It is well settled that an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the prohibition against double jeopardy. State v. Nichols, 337 So.2d 1074 (La.1976); State v. Redfearn, 44,709 (La.App. 2 Cir. 9/23/09), 22 So.3d 1078, writ denied, 09-2206 (La.4/9/10), 31 So.2d 381. This legal maxim is well illustrated in State v. Jenkins, 45,873 (La.App. 2 Cir. 1/26/11), 57 So.3d 405. In that case, the defendant was charged with forcible rape and molestation of a juvenile under the age of 13.
The defendant eventually pleaded guilty; the pertinent statement of facts as recited by the State reads as follows:
The State would ... present evidence that upon [the defendant’s cousin’s] return [to her home] with her husband [the defendant] appeared sweaty and apprehensive and that the parents immediately went to the girl’s room and that’s when they talked to juvenile with the initials of W.J. ... and she stated that [the defendant] had bit her on her neck and had put himself in her pee-pee and *1090 boo-boo, and upon the father hearing this he left the bedroom and Mr. Jenkins took off running out of the house and through the woods.
The State would present evidence which would show that the juvenile ... did present evidence which was collected for DNA and subsequently sent and examined by DNA and a profile obtained from the epithelia fraction of the anal swab was consistent with being a mixture of DNA from at least two individuals. And also a swab of the bite mark on the juvenile’s neck was taken and it was consistent with a mixture from at least two individuals.
Id. at 407.
On appeal, the defendant contended that the forcible rape guilty plea precluded the molestation conviction because the only evidence submitted to support the forcible rape conviction was the same evidence that supported the molestation conviction. The Second Circuit disagreed, reasoning:
11fiFrom a review of the indictment in this case, we find that Jenkins has failed to show a double jeopardy violation. The charging instrument includes one count of aggravated rape and one count of molestation of a juvenile, two separate offenses under Louisiana law which require different proof. The language of the charging instrument, on its face, raises no double jeopardy concerns and would have permitted the state to prosecute two separate and distinct offenses during the same criminal episode or transaction. Likewise, the guilty plea colloquy is sufficient to establish that two separate criminal acts of anal and vaginal intercourse occurred. Thus, a facial review of the record fails to establish a double jeopardy violation.
Id. at 410.
Similarly, in this case, the bill of information charged the defendant with two counts of sexual battery, one count of oral sexual battery, and one count of molestation of a juvenile. All of these offenses are separate offenses that require separate and different proof. At trial, the State established through testimony that the defendant fondled L.L.P. on numerous occasions, both with her clothes on and off. This is sufficient to prove two counts of sexual battery.[5] Testimony further established that the relationship progressed to where the defendant was also performing oral sex on L.L.P. and vice versa, which is sufficient to prove oral sexual battery. Testimony further established that the relationship progressed to where the defendant and L.L.P. were also having intercourse, which is sufficient to prove molestation of a juvenile. L.L.P. testified that all of these offenses occurred up until the time her relationship with the defendant ended more than a year later. The record is more than sufficient to show that the defendant committed separate and distinct offenses of sexual battery, oral sexual battery, and molestation of a juvenile against L.L.P. Accordingly, the defendant has not shown a double jeopardy violation and that this assignment of error has no merit.
|17We reviewed the record errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find that the trial court failed to observe the 24-hour delay between denial of the defendant’s motion for *1091 new trial and sentencing, as required by LSA-C.Cr.P. art. 873. The record does not indicate that the defendant waived the delay. Generally, when a defendant challenges a non-mandatory sentence and the delay is not waived, his sentence must be vacated and the case remanded for re-sentencing, unless defendant does not challenge his sentence nor show prejudice as a result of the failure to waive the twenty-four-hour delay. State v. Jones, 07-271 (La.App. 5 Cir. 10/30/07), 970 So.2d 1143, 1149; State v. Stone, 05-82 (La.App. 5 Cir. 5/31/05), 904 So.2d 810, 816.
In this case, the defendant is challenging the allegedly excessive and the consecutive nature of his sentences. This Court has consistently held that when the defendant challenges the penalty imposed and the imposed sentence is not mandatory, the failure to observe the 24-hour delay mandated by LSA-C.Cr.P. art. 873 cannot be considered harmless error. See, e.g., State v. Young, 04-1318 (La.App. 5 Cir. 4/26/05), 902 So.2d 461, 470, writ denied, 2008-0938 (La.11/21/08), 996 So.2d 1105. In this instance, the defendant’s sentence was not mandatory, and he is challenging his sentences on appeal. Under these circumstances, this Court generally vacates the defendant’s sentence and remands the case for re-sentencing. Id. Accordingly, we vacate the defendant’s sentences and remand this matter for re-sentencing.

CONCLUSION

For the above discussed reasons, the defendant’s convictions are affirmed. His sentences are vacated and this matter is remanded for resentencing.

Convictions Affirmed; Sentences Vacated; Remanded

. In accordance with LSA-R.S. 46:1844(W), the victims in this matter are referenced by their initials.

. Victim herein.

. LSA-R.S.14:81.2 provides, in pertinent part:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age shall not be a defense.
B. Whoever commits the crime of molestation of a juvenile, when the victim is thirteen years of age or older but has not yet attained the age of seventeen, shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, for not less than five nor more than ten years, or both; the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
C.Whoever commits the crime of molestation of a juvenile, when the victim is thirteen years of age or older but has not yet attained the age of seventeen, and when the offender has control or supervision over the juvenile, shall be fined not more than ten thousand dollars, or imprisoned, with or without hard labor, for not less than five nor more than twenty years, or both the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with Code of Criminal Procedure Article 893.

. 1993 La. Acts 592 § 1, effective June 15, 1993, deleted all sex offenses from LSA-C.Cr.P. art. 573 and created LSA-C.Cr.P. art. 571.1, which, as aforementioned, currently establishes the time limitation for sex offenses involving minors.

. Touching through clothing is sufficient to complete the touching element of sexual battery. State v. Simpkins, 44,197, 44,198 (La. App. 2 Cir. 5/13/09), 12 So.3d 1021, rehearing denied, writ denied, 2009-1229 (La.2/5/10), 27 So.3d 296, writ denied, 2009-1539 (La.3/5/10), 28 So.3d 1004.